# 2002 DTA 137

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL V - PONCE Y AIBONITO**

CARLOS SANTOS MONTES
Recurrido

v.

CARS & TRUCKS OUTLET INC.
Recurrente

Núm. KLRA-02-00302

San Juan, Puerto Rico, a 6 de septiembre de 2002

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Jiménez y la Jueza Pabón Charneco

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos Cars & Trucks Outlet Inc., en adelante, el recurrente, solicitando la revisión de una Resolución emitida por el Departamento de Asuntos del Consumidor, en adelante, el D.A.C.O. Mediante dicho dictamen, el D.A.C.O. le ordenó al recurrente, entre otros extremos, restituir a Carlos Santos Montes, en adelante, el recurrido, la suma de $4,995.00 por haber incrementado el precio de venta acordado en un vehículo de motor vendido por la recurrente.

Por las razones que expresamos a continuación, se expide el recurso incoado.

### I

Conforme se desprende del recurso ante nuestra consideración, el 15 de marzo de 2001, el recurrido interpuso querella contra el recurrente ante el D.A.C.O. Surge de las determinaciones de hecho del D.A.C.O. lo siguiente:

*"1. El 18 de enero de 2001, entre las 3:00 a 3:30 de la tarde, el querellante, Sr. Carlos Santos Morales (quien ya no trabaja por razón de retiro) acudió al dealer, Cars & Trucks Outlet Inc., con el propósito de buscar información sobre vehículos de motor, ya que se proponía eventualmente comprar uno.*

*2. En el dealer, el Sr. Carlos Santos (querellante) se encontró con el vendedor, Sr. Edwin Caraballo, a quien conocía de antemano cuando ambos trabajaban en el Banco Popular de Puerto Rico. El querellante (Sr. Carlos Santos) trabajó para esa firma como supervisor de "cajero de piso y oficial de plataforma" de préstamos personales. Nunca trabajó en el Departamento de Préstamos de Automóviles.*

*3. A preguntas del vendedor, Sr. Edwin Caraballo, el Sr. Carlos Santos aseveró estar dispuesto a pagar por el vehículo hasta la cantidad de $20,000.00 por estar recién jubilado y porque pensaba pagar el vehículo en efectivo (cash) con los beneficios monetarios recibidos por la jubilación. Le aseveró al vendedor el no querer tener deudas.*

*4. Posteriormente, el querellante y vendedor pasaron al área de exhibición de vehículos. Luego de examinar varios vehículos y sus respectivos precios, el querellante se interesó en el vehículo Malibú objeto de la controversia de autos. Dicho vehículo tenía "radio-CD y todos los powers (accesorios)".*

*5. Dicho vehículo Malibú no exhibía en ninguna de sus partes información sobre el mismo, por lo que el querellante le preguntó al vendedor sobre el "marbete de los precios". El vendedor aseveró que el referido*

*vehículo había recién llegado de los muelles, por lo que no le había podido montar el documento en cuestión.*

*6. Toda vez que el vehículo en controversia no exhibía su precio, el vendedor, Sr. Edwin Caraballo, fue a consultar con su supervisor sobre el particular.*

*7. Una vez realizada la consulta, el vendedor informó al Sr. Carlos Santos, que el precio de venta del vehículo era de $21,000.00, a lo que el querellante le contestó que sólo podía pagar $20,000.00. Entonces el vendedor volvió a consultar con su supervisor y luego de esta segunda consulta, el vendedor le informó al querellante que su oferta de $20,000.00 había sido aceptada por el dealer.*

*8. Como el querellante no tenía su "chequera" consigo y tenía que hacer gestiones en el banco para los fondos en la cuenta de cheques estuvieran disponibles, le anunció al vendedor que se marcharía del lugar, consultaría con su esposa y que pasaría luego por el dealer. A su vez el vendedor le aseveró que de irse "corría el chance que se quede sin el vehículo porque se estaban vendiendo rápido."*

*9. Además el vendedor le indicó al Sr. Carlos Santos Montes (querellante) que le aceptaba un cheque "postdatado".*

*10. Ante tales circunstancias el querellante decidió formalizar el negocio ese mismo día. Así, pues, el querellante aceptó que el vendedor lo transportará a su casa para buscar su chequera. Durante este lapso, el querellante llamó a su esposa quien labora en el Departamento de Admisión del Hospital Dr. Pila en Ponce, Puerto Rico, y obtuvo el consentimiento de ésta para el negocio del vehículo.*

*11. Una vez regresaron al dealer, y cuando el Sr. Carlos Santos se proponía a endosar el cheque, éste le informó al vendedor que tenía un vehículo marca Kia, saldo, del año 1997 y le preguntó si el dealer se lo tomaba en "trade-in". No era un requisito para el negocio que dicho vehículo fuera tomado en "trade-in", pues el querellante estaba preparado para pagar $20,000.00 por el vehículo en controversia. A preguntas de la representación legal del dealer querellado, el Sr. Carlos Santos declaró que el único efecto que hubiera tenido el que no le aceptaran el vehículo Kia en "trade-in" a su satisfacción era que sencillamente pagaría los $20,000.00 acordados como precio de venta del vehículo en controversia.*

*12. Ante la pregunta del Sr. Carlos Santos, el vendedor fue a consultar con su supervisor el asunto del "trade-in" . Luego de dicha consulta, el vendedor informó al Sr. Carlos Santos que le podían tomar el vehículo Kia en "trade-in" por "dos mil dólares". El querellante no aceptó dicha oferta por el vehículo Kia y preguntó si le podían dar $4,000.00.*

*13. Una vez más el vendedor se marchó a discutir el asunto con su supervisor, finalizada la reunión, el vendedor regresa a donde el querellante y traía consigo el contrato completado y listo para la firma del querellante. Eran las 7:30 p.m.*

*14. Cuando el Sr. Carlos Santos revisó el referido contrato se percató que le habían aceptado su vehículo Kia por $4,995.00, pero a la misma vez se fijó que el precio de venta del vehículo había subido de $20,000.00 a $24,995.00. Además, el Sr. Carlos Santos notó que en el referido contrato aparecía una partida adicional de $210.00 por concepto de tablilla, cantidad que no se había mencionado antes cuando acordaron el precio de venta.*

*15. El querellante le cuestionó al vendedor porqué el vehículo había subido de precio de $20,000.00 a $24,995.00 y éste le contestó que la diferencia de $4,995.00 no era para beneficio del vendedor, sino para el pago de arbitrios al Departamento de Hacienda de Puerto Rico.*

*16. Para ese entonces, eran las 8:00 de la noche; habían pasado unas 5 horas desde que el querellante acudió al dealer. Cansado y confiado en las representaciones que le hizo el dealer en cuanto al asunto del precio del vehículo, sus arbitrios y que "se corría el chance de quedarse sin el vehículo porque se estaba vendiendo rápido", procedió a firmar el contrato y a pagarle al dealer la suma de $20,000.00 como precio de venta del vehículo en controversia más la suma de $210.00 por concepto de tablilla de éste. El dealer querellado tomó, en adición, el vehículo Kia en "trade-in" por la suma de $4,995.00.*

*17. Una semana luego de la compraventa, el querellante observó en los diferentes rotativos del país varios anuncios del vehículo de motor de la misma marca y características al suyo y ninguno sobrepasaba la cantidad de $20,000.00 de precio de venta.*

*18. Procedió entonces el querellante a acudir al Departamento de Hacienda, Sección de Arbitrios de Ponce, y allí le informaron que los arbitrios del vehículo en controversia sumaban a $3,250.75. Luego de dicha gestión, el querellante acudió ante nos y radicó la Querella que nos ocupa.*

*19. El Sr. Carlos Santos acudió al dealer solicitándole la devolución de $4,995.00 dólares. El dealer quedó en responderle en el término de dos semanas luego de consultar. El dealer le ofreció cambio de aceite y filtro gratis por un año.*

Así las cosas, y conforme hemos reseñado, el 15 de marzo de 2001, el recurrido interpuso querella contra el recurrente, solicitando el reembolso del dinero pagado en exceso al precio de venta originalmente pactado, así como el pago de intereses por temeridad y honorarios de abogado. En apretada síntesis, alegaba el recurrido en su querella que el recurrente había incurrido en falsas representaciones en cuanto al precio de venta del vehículo y sus respectivos arbitrios en contravención a lo dispuesto en el ordenamiento jurídico y las leyes en protección al consumidor. Esto se realizó con el fin de obtener el consentimiento viciado del recurrido para que accediere a un aumento en el precio de venta del vehículo de motor en controversia de $20,000, conforme fuere pactado por las partes, a $24,995.00. A esta cantidad se le debían agregar, asimismo, $210.00 por concepto de tablilla que le fue requerido pagar al recurrido. En su consecuencia, solicitaba que dichas sumas le fueren restituidas por el recurrente.

Trabada la controversia, y celebrada la vista administrativa, el 9 de noviembre de 2001, notificada el 20 de marzo de 2002, el D.A.C.O. emitió su determinación. Insatisfecho con dicho dictamen, el recurrente presentó una moción de reconsideración el 5 de abril de 2002. Dicha solicitud fue denegada mediante orden expedida y notificada el 17 de abril de 2002.

Inconforme, recurre a esta Curia en revisión el 10 de mayo de 2002. El 31 de mayo de 2002, le solicitamos al recurrido y al D.A.C.O. mostraran causa por la cual no debíamos eliminar del dictamen del D.A.C.O. la cantidad de $210.00 por concepto de la tablilla. Dichas partes han comparecido. Procedemos a resolver conforme lo intimado.

## II

En su recurso, el recurrente plantea que incidió el D.A.C.O. al ordenar la devolución de $4,995.00 por aumento en el precio del vehículo de motor; al concluir que el consentimiento del recurrido estuvo viciado y que hubo prácticas y anuncios engañosos; al ordenar la devolución de los $210.00 pagados por el recurrido para la adquisición de la tablilla del vehículo en controversia; y al imponer el pago de honorarios de abogado.

## III

La Sec. 2014 del Código de Rentas Internas de 1994, según enmendado, 13 L.P.R.A. sec. 9014 (D)(c)(3), establece la obligación a todo importador o distribuidor de adherir a cada automóvil o vehículo de uso múltiple una etiqueta o rótulo. Dicha etiqueta o rótulo, provista por el Departamento de Hacienda, deberá contener la

información que el Secretario de dicha agencia determine sea necesaria para que cada vehículo quede clara y visiblemente identificado con su precio sugerido de venta al consumidor.

A su vez, la Sec. 6097 del Código de Rentas Internas, *supra*, 13 L.P.R.A. sec. 8097, establece que el *"vendedor mantendrá en el vehículo el precio sugerido de venta para fines de información al consumidor. La ausencia de rótulos contentivos de la información conllevará una multa administrativa de cinco mil (5,000) dólares por cada infracción. Tal omisión constituirá delito menos grave que será sancionada conforme a lo dispuesto en la sec. 8094 de esta Parte. Cada violación constituirá un delito distinto y separado."*

El 2 de agosto de 1990, el D.A.C.O. promulgó el Reglamento Núm. 4339, Reglamento de Prácticas y Anuncios Engañosos, en adelante, el Reglamento, cuyo propósito es proteger a los consumidores de las prácticas y anuncios que creen o tiendan a crear una apariencia falsa o engañosa sobre bienes o servicios ofrecidos en el comercio. Así mismo, fomenta establecer un clima de confianza y respeto entre comerciantes y consumidores. Art. 2 del Reglamento.

El Reglamento define práctica engañosa como cualquier acto, práctica, curso de conducta, mecanismo de persuasión, ofrecimiento, información o promesa hecha, aparentemente hecha o sugerida, que fuere engañosa, falsa, fraudulenta o que de cualquier forma tienda al engaño, o mediante la cual se tergiversen o puedan malinterpretarse los verdaderos hechos de las cosas. Art. 5(n). Dicho término incluye *"[Representar] o expresar un hecho o una oferta si tal declaración es engañosa, o posee la tendencia o capacidad para confundir, o si no se tiene la información suficiente para sustentarla."* Art. 7B(1).

A tales efectos, el Art. 9 del Reglamento prescribe que todo comerciante divulgará clara y adecuadamente los datos relevantes, antes de efectuar la venta u ofrecimiento de venta, libre de ambigüedades que puedan confundir al consumidor. De la misma forma, todo anuncio divulgará clara y adecuadamente los datos relevantes, a saber:

*"1. precio del bien o servicio;*

*2. que se cobrará una cantidad adicional, por cualquier concepto;*

*...."*.

El Reglamento faculta al Secretario del D.A.C.O. para imponer y cobrar multas hasta un máximo de diez mil (10,000) dólares por infracción, por cualquier incumplimiento de las disposiciones del mismo, o de las órdenes y resoluciones emitidas bajo su palio. Art. 27 del Reglamento.

De igual forma, dicha reglamentación establece que la imposición de penalidades no privará a los consumidores del derecho a ejercer las acciones independientes que surjan bajo las disposiciones de este reglamento, otros reglamentos o de la ley, incluyendo reclamaciones en daños y perjuicios.

Por otro lado, el Art. 1231 del Código Civil, 31 L.P.R.A. sec. 3391, establece que para que exista un contrato deben coincidir: (1) el consentimiento de los contratantes, (2) un objeto cierto que sea materia del contrato, y (3) la causa de la obligación. Los contratos serán obligatorios independientemente de la forma en que hayan sido celebrados, siempre que estén presentes estas condiciones, esenciales para su validez. 31 L.P.R.A. sec. 3451.

Los contratos se perfeccionan por el mero consentimiento de las partes. Es desde ese momento que se convierten en obligatorios, no sólo en cuanto al cumplimiento de lo pactado, sino también en todas las consecuencias que sean razonables de acuerdo a la buena fe, al uso y a la ley. Art. 1210, 31 L.P.R.A. sec. 3375. Para que concurra el consentimiento, tiene antes que surgir una oferta, que la misma sea aceptada y que haya una causa que ha de constituir el contrato. Art. 1214, 31 L.P.R.A. sec. 3401. Será nulo el consentimiento que haya

sido prestado por error, violencia, intimidación o dolo. Art. 1217, 31 L.P.R.A. sec. 3404.

En cuanto a la figura del dolo, el Art. 1221 del Código Civil establece que:

*"Hay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho."*

31 L.P.R.A. sec. 3408.

Al respecto, se señala que el dolo es sinónimo de mala fe. Significa la maquinación de la cual se sirve uno de los contratantes para engañar al otro. Añade que éste vicia la voluntad de uno de los contratantes hasta el extremo de verse inducido a otorgar un contrato por el error que maliciosamente ha provocado la otra parte. Puig Brutau, *Fundamentos de Derecho Civil, Doctrina General del Contrato*, 3ra. ed., Barcelona, Bosch, Casa Editorial, S.A., T. II, Vol. 1, pág. 92, (1988). Es decir, por dolo se entiende el complejo de malas artes, contrarias a la honestidad, dirigido a sorprender la buena fe ajena para beneficio propio. *Sánchez Rodríguez v. López Jiménez,* 118 D.P.R. 701 (1987).

Existen dos clases de dolo, ambos con características y circunstancias diferentes. El grave o causante lleva, motiva y sirve de ocasión para celebrar un contrato de modo tal que sin éste no se hubiese completado el mismo. *Colón v. Promo Motor Imports, Inc.,* 144 D.P.R. 659 (1977), citando a Scaevola, *Código Civil Comentado*, Ed. Reus, Tomo XX, pág. 709 2da. Ed. 1958. Es este tipo el que determina el consentimiento. *Id.* A su vez produce la nulidad de los contratos cuando ha sido empleado por una de las partes contratantes. Art. 1222 del Código Civil, 31 L.P.R.A. sec. 3409.

El dolo incidental es aquél que no tiene una influencia decisiva en la obligación y sólo facilita la celebración del contrato. Contrario al dolo causante, el perjudicado tiene voluntad de contratar aun sin éste, pero hay engaño en la forma en que se celebra el contrato. *Colón v. Promo Motor Imports, Inc., supra*, citando a Manuel Albaladejo, *Comentarios al Código Civil y Compilaciones Forales*, Tomo XVII, Vol. 1-B, 588 (1993). Es importante señalar que el dolo incidental no tiene el efecto de anular el contrato. Sólo crea una causa de acción de daños y perjuicios a favor del perjudicado por la pérdida sufrida.

Corresponde a quien alega la conducta dolosa el peso de la prueba. *Canales v. Pan American*, 112 D.P.R 329 (1982). Esto se debe a que el dolo no se presume. Aún así, no quiere decir que tenga que probarse directamente la conducta. Basta con establecerse que, en efecto, existió dolo mediante prueba circunstancial o por inferencia. *Márquez v. Torres Campos*, 111 D.P.R. 854 (1982).

## IV

Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia ante nos.

En su escrito, el recurrente señala que incidió el D.A.C.O. al ordenar la restitución de los $4,995.00 al recurrido. Plantea que el contrato de compraventa suscrito es uno integrado, que recoge la voluntad entre las partes, por lo cual, conforme a las Regla 69b de las Reglas de Evidencia, no es admisible evidencia extrínseca del contenido del mismo. Aduce, además, que es errónea la determinación del foro administrativo al concluir que medió vicio en el consentimiento en el otorgamiento mismo. En la alternativa sostiene que, de haber mediado vicio en el consentimiento, el remedio procedente sería la resolución del contrato con la respectiva entrega de las contraprestaciones.

Comenzaremos señalando que, al revisar casos de esta naturaleza, debemos tener en cuenta, en primer lugar, la norma que requiere confirmar las determinaciones de hechos de las agencias administrativas, siempre que sean sostenidas por la evidencia sustancial que obra en el expediente y revisar las conclusiones de derecho en toda su

extensión. Segundo, debemos tener presente la norma que prohíbe la sustitución del criterio del organismo administrativo por el judicial, excepto cuando aquél sea errado en derecho, arbitrario o irrazonable. Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico"*, 3 L.P.R.A. sec. 2175; *Misión Ind. v. J.P. y A.A.A.,* 142 D.P.R. 656 (1997); *Fuertes y otros v. A.R.P.E.,* 134 D.P.R. 947 (1993).

Es pertinente aclarar que la determinación del D.A.C.O. tiene el efecto de adjudicar que el consentimiento del recurrido se vio viciado por la actuación dolosa del recurrente. Podemos llegar a esta decisión luego de examinar el lenguaje utilizado en la Resolución recurrida al concluir que .... *"[l]uego de las negociaciones por el vehículo en trade-in, el dealer querellado aceptó el mismo por una cantidad más generosa que la propuesta por el querellante. Sin embargo, la cantidad envuelta en el trade-in por $4,995.00 fue la misma que el dealer unilateralmente aumentó al precio de venta, so pretexto de que esa suma era por asuntos de arbitrios. Fue precisamente ante esta creencia y ante esta maquinación del dealer querellado que el querellante prestó su consentimiento en cuanto a dicho aumento al precio de venta. Consentimiento viciado del querellante que el dealer supo arrancar aprovechándose del interés de éste por el vehículo y el cansancio producido luego de estar unas cinco horas en negociaciones."*

Por consiguiente, este recurso gira en torno a determinar si incidió el foro administrativo al determinar que existió vicio en el consentimiento del recurrido al comprar el vehículo de motor en controversia.

Es norma reiterada que el dolo no se presume, es decir, quien alega la conducta dolosa tiene que producir evidencia destinada a establecer la ocurrencia del mismo. Sin embargo, lo anterior no implica que tenga que probarse directamente la conducta. Basta con establecerse que, en efecto, existió dolo, mediante prueba circunstancial o por inferencia. *Márquez v. Torres Campos, supra.*

En el caso de autos, el foro administrativo entendió que existía evidencia suficiente para concluir, como en efecto lo hizo, que el recurrente incurrió en conducta dolosa con el fin de obtener el consentimiento del recurrido para la compra del vehículo en controversia. Entendemos que esta determinación está sustentada por la prueba presentada ante la jueza administrativa del D.A.C.O.

Nótese que surge de la prueba presentada por el recurrido, la cual no fue controvertida por la recurrente, que las partes acordaron la venta del vehículo de motor en cuestión por la cantidad de $20,000, que una vez perfeccionada la compraventa, el recurrido manifestó su intención de dar su vehículo en *trade in*, con la intención de que dicha cantidad se abonara al precio de venta pactado de $20,000. En esa ocasión, el recurrente le ofrece una cantidad irrisoriamente baja por el vehículo, por lo que el recurrido rechaza la oferta. Luego de más de cinco horas de negociaciones, el recurrente realiza un segundo ofrecimiento para la compra del vehículo en *trade in,* esta vez por $4,995, suma que según hace constar la Resolución era mayor a la solicitada por el recurrido al inicio de las negociaciones. En esta ocasión, el recurrido decide aceptar la oferta y el recurrente unilateralmente aumentó el precio de venta a $24,995.00. Adujo como causa para el aumento en el precio que el mismo se debía al pago de arbitrios del vehículo.

Concurrimos con el foro administrativo al concluir que la conducta del recurrente es por naturaleza dolosa y constituye una practica engañosa de venta, proscrita por el Reglamento de Prácticas y Anuncios Engañosos y el Código de Rentas Internas. Conforme reseñáramos anteriormente, el recurrente tenía la obligación no sólo de exhibir en el vehículo el precio de venta sugerido incluyendo los arbitrios antes de ofrecer en venta el vehículo, sino también la de divulgar clara y adecuadamente todos los datos relevantes, antes de efectuar la venta u ofrecimiento de venta, libre de ambigüedades que puedan confundir al consumidor. Indubitadamente, el precio de venta es un dato relevante, así como cualquier cantidad adicional que habría de cobrarse por cualquier concepto en la venta del vehículo. Resulta meridianamente claro que cuando el recurrido ofreció comprar el vehículo por $20,000 esta cantidad constituía la cantidad final que habría de pagar éste en la adquisición del vehículo

(incluyendo arbitrios), precio que fue aceptado por el dealer. Es inherentemente dolosa la actuación del recurrido de aumentar unilateralmente el precio de venta pactado por exactamente la misma cantidad que otorgaría en débito por el vehículo en *trade in*. Reiteramos que lo anterior constituye una violación al Reglamento de Prácticas y Anuncios Engañosos.

El recurrente argumenta que, de mediar vicio en el consentimiento del contrato, lo procedente era decretar la nulidad del mismo con la entrega de las contraprestaciones.

Entendemos que no le asiste la razón.

Es sabido que no todo vicio en el consentimiento da base a la nulidad del contrato. A fin de que un contrato sea declarado nulo por vicio en el consentimiento en los casos de dolo, éste tiene que ser grave. Hablamos de dolo grave o causante, en aquellos casos en que el vicio recae sobre los elementos esenciales que dieron génesis a la realización del contrato. Por el contrario, en los casos de dolo incidental, el perjudicado tiene voluntad de contratar aun sin éste, pero hay engaño en la forma en que se celebra el contrato. En esta circunstancia, el contratante tiene derecho al resarcimiento por los daños y perjuicios sufridos.

En virtud de lo anteriormente esbozado, entendemos que no erró el D.A.C.O. al ordenar la restitución de los $4,995.00.

En cuanto a la imposición de honorarios de abogado, la Ley Núm. 170, *supra*, establece que las agencias administrativas tienen facultad para imponer honorarios de abogados en las mismas circunstancias en que procede imponer honorarios bajo la Regla 44 de las de Procedimiento Civil. 3 L.P.R.A. sec. 2170(a)(c). El propósito de los honorarios de abogados es sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, gastos, trabajo e inconveniencias de un pleito. *Bonilla Medina v. P.N.P.,* 140 D.P.R. 294 (1996); *Fernández v. S.J. Cement*, 118 D.P.R. 713, 718 (1987).

La imposición de honorarios descansa en la sana discreción de la agencia. *Raoca Plumbing v. Trans World*, 114 D.P.R. 464 (1983). Cuando una agencia administrativa ejerce su discreción al imponer honorarios de abogados, dicha determinación no será alterada por los tribunales, a menos que haya mediado un abuso en ella. D. Fernández, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Forum, 1993, pág. 112.

En el caso de autos no encontramos indicio alguno de que D.A.C.O. abusara de su discreción al imponerle $700.00 en honorarios de abogados al recurrente. Éste no respondió con la debida diligencia al reclamo del recurrido, dejándole como única opción, la de contratar representación legal para hacer valer sus derechos. Concluimos que procede la imposición de honorarios de abogados.

Ahora bien, somos de opinión que incidió el foro administrativo al ordenar la devolución de los $210.00 por concepto de tablilla. Veamos.

El recurrido nos señala que el pago de arbitrios y tablillas son accesorios a la cosa principal, que en el caso de autos es el vehículo de motor. Argumenta que el dealer no puede realizar una entrega legal al consumidor sin previamente haber pagado al Estado los correspondientes cargos por concepto de arbitrios y tablilla.

Sobre el particular, una lectura de las disposiciones legales y reglamentarias revelan de manera palmaria que el precio sugerido de venta que se aneja a los vehículos nuevos incluye los arbitrios pagados al momento de la importación. Esta información es generada en el Departamento de Hacienda. Lo anterior es de conocimiento del público en general.

Ahora bien, el costo de la tablilla no forma parte del cálculo efectuado por el Departamento de Hacienda, toda vez que es el Departamento de Transportación y Obras Públicas quien la expide. De hecho, en Puerto Rico no se registra ni se expide certificado de título a ningún vehículo de motor si el solicitante o la persona que ha vendido el mismo, no presenta un recibo acreditativo de haber pagado al Secretario de Hacienda los correspondientes arbitrios, conforme el Código de Rentas Internas. Otorgado el certificado de título, se le acompañará el permiso para transitar en las vías públicas de la Isla. Véase, Ley Núm. 22 de 7 de enero de 2000, según enmendada, conocida como "*Ley de Vehículos y Tránsito de Puerto Rico*", 9 L.P.R.A. Secs. 5002 *et seq*.

En. el caso de autos, somos de opinión que incidió el tribunal *a quo* al incluir los derechos pagados por concepto de la tablilla.

## V

Por los fundamentos expresados, se expide el recurso presentado y se modifica la Resolución recurrida a fin de eliminar la cantidad de $210.00 por concepto de tablillas que el recurrente deberá devolver al recurrido.

Así lo acordó el Tribunal y lo certifica la Señora Secretaria General.

Aida I. Oquendo Graulau
Secretaria General