JORGE LUIS COLÓN RIVERA, ETC., demandantes y peticionarios, *v.* PROMO MOTOR IMPORTS, INC. y CITIBANK N.A., demandados y recurridos.

*Número:* CC-96-443 *Resuelto:* 31 de diciembre de 1997

---

*Enrique González Martí*, abogado de la parte peticionaria; *José Juan Torres Escalera*, de *Jiménez, Graffam & Lausell*, abogado de la parte recurrida.

# I

El sábado 12 de noviembre de 1994 Jorge Luis Colón Rivera y su esposa Josefina Jiménez Acevedo acudieron al establecimiento del demandado, Promo Motor Imports, Inc. (en adelante Promo) con el propósito de adquirir un vehículo para su negocio de transporte de mercancía. Colón llevaba once años en ese negocio; contaba para esa fecha con siete empleados; tenía ingresos aproximados de cincuenta mil dólares mensuales y, anteriormente, había adquirido otros nueve vehículos con fines similares.

Colón se interesó en un vehículo, tipo *van*, marca Ford, modelo E-250 de 1992, tablilla Núm. 525–894 con un precio de venta de $16,000. A tales fines, le informó a Promo que adquiriría el vehículo por medio de un contrato de arrendamiento financiero a través de Velco Leasing de P.R., Inc. (en adelante Velco) con quien había hecho transacciones similares antes. Entendía que su excelente historial de crédito con Velco le permitiría obtener dicho financiamiento sin pronto pago.

Como era sábado, y Promo no mantenía relaciones comerciales con Velco, Promo le sugirió a Colón que firmase un contrato de venta al por menor a plazos con el Citibank, N.A. con quien Promo tenía acuerdos para el financiamiento de los vehículos que vendía. Tal financiamiento con Citibank requería un pronto de $3,900. Colón aceptó esta propuesta de Promo, pero de las negociaciones entre ambas partes resulta meridianamente claro que éstas acordaron que el contrato así otorgado sería enviado al Citibank sólo, si dentro de una semana, Velco no aprobaba el arrendamiento financiero que Colón interesaba.

Igualmente, conforme al acuerdo verbal entre las partes, el cheque por $3,900 que Colón le dio en esa ocasión a Promo sería retenido por éste sin poder ser cobrado, en espera de que Velco tramitara el financiamiento sin pronto interesado por Colón. No cabe duda de que el envío del

contrato a Citibank y el pago del pronto aludido estaban supeditados a la falta de aprobación de dicho financiamiento por Velco dentro de una semana.

Confiando en lo antes dicho, Colón firmó un contrato en blanco con el Citibank, emitió un cheque por la cantidad de $3,900 y se llevó el carro ese mismo sábado.

Sorprendentemente y contrario a lo acordado entre las partes, el lunes siguiente (14 de noviembre de 1994) Promo tramitó los financiamientos con Velco y Citibank simultáneamente, y depositó en su cuenta el cheque de $3,900.

Posteriormente, luego de varios trámites y a instancia de Colón, Velco finalmente aprobó el arrendamiento financiero sin requerir pronto pago alguno.

Mientras tanto, Colón se enteró de que Promo había cobrado su cheque por $3,900, incumpliendo así el acuerdo que tenía con Colón. Molesto por ello, Colón le informó a Velco que no firmaría los documentos relativos al financiamiento y que daba por rescindido el contrato con Promo. Promo, por su parte, se negó a resolver el contrato. Colón entonces devolvió el vehículo a Promo.

Surge de los autos que los $3,900 cobrados por Promo nunca le fueron reembolsados a Colón, a pesar de sus requerimientos. También se desprende que el cobro de esa suma provocó un desajuste en el balance disponible en la cuenta de cheques de Colón, que ocasionó que no se honraran dos cheques emitidos por éste a favor de otros acreedores.

Por su parte, Citibank, que había aprobado también el contrato de venta al por menor a plazos enviado por Promo, se vio precisado a ejecutar su garantía ante la falta de pago de los demandantes.

A raíz de estos hechos, el 24 de enero de 1995, Colón, su esposa y la sociedad legal de gananciales integrada por éstos demandaron a Promo en la acción que aquí nos concierne. Alegaron haber sido engañados por Promo y solicitaron una indemnización por los daños que le fueron ocasionados.

Luego de varios trámites procesales, el 22 de mayo de 1996, el Tribunal de Primera Instancia dictó una sentencia *nunc pro tunc*([1]) para declarar con lugar la demanda; ordenar la restitución de los $3,900 en cuestión, y para imponer $8,000 en daños y $1,500 en honorarios de abogado. En síntesis, dicho tribunal concluyó que había mediado dolo en el otorgamiento del contrato, ya que los demandantes habían sido inducidos a pensar que el negocio se llevaría a cabo, en efecto, de la manera y con el financiamiento previamente acordados. Determinó que a pesar de la experiencia que poseía el demandante como comerciante, no cabía la más mínima duda de que a éste se le indujo a creer que: (1) "se honraría su predilección en cuanto a intentar [el financiamiento] con Velco"; (2) "se esperaría una semana por la contestación de Velco"; (3) "no se utiliz[aría] el cheque nada más que en el caso de que Velco no aceptara la transacción", y (4) "la firma en el contrato en blanco era sólo si Velco no accedía y había que intentar el financiamiento con [Citibank]". Dispuso, además, que Colón firmó en blanco el documento del Citibank, sólo por el convencimiento de que la antes mencionada era la transacción acordada. Respecto a los daños, el tribunal hizo constar que los demandantes habían probado que no se habían honrado sus cheques a otros acreedores por falta de fondos, aun cuando no establecieron que los daños a su negocio transcendieron más allá de eso. También dispuso el foro de instancia que, en el caso de autos, no se había demostrado si la condición de nervios e insomnio que padece Colón por razón de este incidente ha tenido que ser tratada mediante medicamentos.

No conforme con esta determinación, Promo presentó un recurso de *certiorari* ante el Tribunal de Circuito de Apelaciones.

El 22 de octubre de 1996 dicho tribunal revocó en su totalidad la sentencia dictada por el foro de instancia. Con-

---

([1]) El 10 de julio de 1996 dicho tribunal emitió una sentencia en la cual ordenó la restitución de $3,000 cuando en realidad la cuantía dada en calidad de pronto fue de $3,900. A los fines de corregir su error, enmendó posteriormente su sentencia.

cluyó, bajo las mismas determinaciones de hecho esboza-
das por instancia, que en este caso el incumplimiento en
torno al financiamiento era un asunto subsidiario en la
contratación, cuyo efecto no podía ocasionar la resolución
de la obligación principal de vender y comprar un vehículo
a precio cierto y sin defectos desconocidos. Indicó que el
incumplimiento en este caso se circunscribió a los términos
del financiamiento, asunto —que a su juicio— queda al
margen del negocio principal de compra y venta vehicular.
Según dicho tribunal apelativo, lo que procedía en este
caso era firmar el financiamiento con Velco, requerir a
Promo la devolución de los $3,900 del pronto y reclamar
por los daños y perjuicios, si algunos, ocasionados por el
cobro anticipado del cheque. Señaló, además, que en casos
de incumplimiento de contrato, como el de autos, los daños
por angustias mentales sólo proceden si éstos podían ser
previstos al momento de la contratación, cosa que no se
probó en el caso de autos. De acuerdo con ese tribunal, en
el caso de autos, los demandantes no lograron probar el
daño económico causado por el cobro anticipado del cheque
ni la naturaleza compensable de éste. Por último, revocó la
condena por honorarios de abogado.

El 27 de noviembre de 1996 los demandantes presenta-
ron el correspondiente recurso de *certiorari* ante nos. En
esencia, arguyen que el tribunal apelativo incidió: (1) al
interpretar erróneamente las determinaciones de hecho es-
bozadas en su sentencia por el tribunal de instancia; (2) al
darle validez a un contrato de arrendamiento financiero
firmado en blanco en contravención a la Ley Núm. 76 de 13
de agosto de 1994 (10 L.P.R.A. sec. 2401 *et seq.*); (3) al
concluir que se trataba de un contrato de compraventa y no
de un contrato de arrendamiento financiero; (4) al determi-
nar que no se causaron daños, y (5) al permitir que se
produjera un enriquecimiento injusto.

El 20 de diciembre de 1996, por unanimidad, concedi-
mos un término a la parte recurrida para mostrar causa
por la cual no debíamos expedir el auto solicitado y revocar

la sentencia del tribunal de circuito. Dicha parte compareció el 21 de enero de 1997.

Vistas las comparecencias de ambas partes, pasamos a resolver según lo intimado.

## II

Es evidente que en este caso la controversia principal gira en torno a si existió o no dolo en la formación y en el cumplimiento del contrato de compraventa entre Colón y Promo.

El Art. 1213 del Código Civil de Puerto Rico dispone que uno de los elementos esenciales que deben concurrir para la existencia de todo contrato es el consentimiento de las partes. 31 L.P.R.A. sec. 3391. De acuerdo con el Art. 1217 dicho consentimiento será nulo si éste fue prestado por error, violencia, intimidación o dolo. 31 L.P.R.A. sec. 3404. Existe dolo "cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho". Art. 1221 del Código Civil, 31 L.P.R.A. sec. 3408.

El dolo se entiende como todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a resumirse el estado de ánimo de aquel que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él. *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701, 708 (1987). Véanse, además: *Rivera Vda. de Hernández v. Hernández*, 44 D.P.R. 356, 357–358 (1933); J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed. rev., Barcelona, Ed. Bosch, 1985, T. I, Vol. 2, pág. 504. Es la voluntad consciente de producir un acto injusto. F. Puig Peña, *Compendio de Derecho Civil español: obligaciones y contratos*, Barcelona, Ed. Nauta, 1966, T. III, Vol. 1, pág. 183.

Contrario a lo intimado en el texto del artículo 1217

antes mencionado, no todo tipo de dolo produce la nulidad del contrato. A tales efectos, el Art. 1222 del Código Civil dispone que "[p]ara que el dolo produzca la nulidad de los contratos, deberá ser grave y no haber sido empleado por las dos partes contratantes". 31 L.P.R.A. sec. 3409. Este tipo de dolo con características de gravedad lo hemos denominado anteriormente como el *dolo causante*. *Rivera v. Sucn. Díaz Luzunaris*, 70 D.P.R. 181, 185 (1949). Es el que causa, motiva, sirve de ocasión y lleva a celebrar el contrato, de modo tal que sin él, éste no se hubiera otorgado. Q.M. Scaevola, *Código Civil Comentado*, 2da ed., Madrid, Ed. Reus, 1958, T. XX, pág. 709; J. Puig Brutau, *op. cit.*, 1954, T. II, Vol. I, pág. 125; Puig Peña, *op. cit.*, 1966, Tomo I, pág. 616. Es aquel que determina el consentimiento. *Rivera v. Sucn. Díaz Luzunaris*, supra, pág. 185 esc. 5; J.M. Manresa, *Comentarios al Código Civil español*, 6ta ed., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 588; M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Edersa, 1993, T. XVII, Vol. 1-B, pág. 588. Es aquel que inspira y persuade a contratar, y sin el cual no hubiese habido contratación. Scaevola, *op. cit.*, pág. 709.

Por otro lado, existe otra especie de dolo, denominado por el Art. 1222 del Código Civil, *supra*, como *dolo incidental*, cuya existencia no produce la nulidad del contrato sino que "sólo obliga al que lo empleó, a indemnizar daños y perjuicios". Ello es así, ya que este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación. Manresa, *op. cit.*, pág. 588. Éste sólo facilita la celebración del contrato. Albaladejo, *op. cit.*, pág. 406. En el dolo incidental, contrario a en el dolo causante, existe la voluntad de contratar del perjudicado, pero hay engaño en el modo en que se celebra el contrato. Sin éste, el contrato de todas formas se hubiera celebrado, pero no bajo las mismas condiciones. Albaladejo, *op. cit.*, pág. 407. No se trata, pues, de la voluntad o no de contratar en sí misma considerada, sino de la voluntad de contratar en determinadas condiciones. Scaevola, *op. cit.*, pág. 710. Cualquier engaño

con respecto a dichas condiciones no arranca por sí sólo el consentimiento en la totalidad de la obligación, sino en algún extremo o particularidad de ella.

■ Los efectos contrapuestos de cada tipo de dolo son notables. Como señaláramos antes, mientras que el dolo causante produce la nulidad del contrato, el incidental permite únicamente la indemnización por daños y perjuicios. En el primero, el contrato otorgado, aunque no sea inexistente, es anulable y la acción para su nulidad prescribe a los cuatro años. En el segundo, el dolo incidental, el contrato se mantiene, naciendo de él las obligaciones estipuladas, pero el perjudicado podrá repetir contra el causante en una acción de daños y perjuicios para la reparación de la pérdida sufrida y de la ganancia dejada de percibir. Scaevola, *op. cit.*, pág. 712.

■ Resulta menester señalar que los dos tipos de dolo antes discutidos vician el consentimiento en el origen o en la formación del contrato, esto es, en la etapa de la contratación.

Existe otra aplicación del dolo contractual que surge, no en la etapa de la contratación, sino en el curso de la consumación del contrato. Este consiste en la omisión consciente, intencionada y voluntaria de eludir el cumplimiento de la obligación, con conocimiento de que se realiza un acto injusto. *Canales v. Pan American*, 112 D.P.R. 329, 340 (1982); *Márquez v. Torres Campos*, 111 D.P.R. 854, 864 (1982). A tenor con los Arts. 1054 y 1060 del Código Civil, 31 L.P.R.A. secs. 3018 y 3024, respectivamente, en estos casos, la persona que incurriese en dolo quedará sujeta a indemnizar por los daños y perjuicios que conocidamente se deriven de su falta de cumplimiento. Véase, además, *Ramos v. Orientalist Rattan Furnt., Inc.*, 130 D.P.R. 712 (1992).

■ Tanto bajo el dolo en la formación del contrato, sea causante o incidental, como en el dolo en el cumplimiento de la obligación corresponde a quien reclama dicha conducta dolosa la responsabilidad de la prueba. *Canales*

*v. Pan American,* supra, pág. 340. El dolo, al igual que el fraude, no se presume; pero ello no significa necesariamente que tenga que probarse directamente. Puede establecerse mediante inferencia o por evidencia circunstancial. *Márquez v. Torres Campos,* supra, pág. 863 esc. 19; *Miranda Soto v. Mena Eró,* 109 D.P.R. 473, 478 (1980).

Ya hemos enfatizado antes la importancia que tienen las circunstancias concretas del caso, en la determinación de si existe dolo que anule el consentimiento. Hemos señalado que se debe considerar, entre otras cosas, la preparación académica del perjudicado así como su condición social y económica, y las relaciones y el tipo de negocios en que se ocupa. *Citibank v. Dependable Ins. Co., Inc.,* 121 D.P.R. 503, 519 (1988); *Miranda Soto v. Mena Eró,* supra, pág. 478. Puede ser que en un caso el dolo no surja de un simple hecho, sino del conjunto y la evolución de circunstancias y manejos engañosos. *Acosta & Rodas, Inc. v. PRAICO,* 112 D.P.R. 583, 616 (1982). De la misma manera, puede ser que lo que aparenta ser incidental desde la perspectiva general del contrato en cuestión sea en realidad esencial para los contratantes, por lo que el engaño o incumplimiento con alguno de los elementos de la contratación puede dar lugar a la variante del dolo causante. Albaladejo, *op. cit.,* pág. 431.

Vista la normativa antes reseñada, réstanos aplicarla a este caso.

De los hechos antes relatados surge con meridiana claridad que Promo actuó dolosamente al inducir a Colón a firmar un contrato en blanco y hacerle creer que éste no sería enviado a Citibank si Velco aprobaba la transacción dentro de una semana. No cabe duda tampoco de que Colón no hubiese adquirido el automóvil a no ser porque se sentía confiado de que Velco le aprobaría el financiamiento deseado, tal como ocurrió. Nótese que desde el momento mismo en que Colón mostró interés por el vehículo, expresó como condición que el financiamiento se llevara a cabo por medio de Velco. Ello se constata, además, por el hecho de

que el propio Colón llamó a Velco, luego de haber convenido la compra con Promo, para solicitar él también el financiamiento con dicha compañía, sin tener que pagar un pronto. Se constata, asimismo, por el hecho de que Colón, una vez enterado del envío de documentos a Citibank y del cobro de su cheque por Promo, opta por devolver el vehículo en cuestión, pues no le interesaba adquirirlo bajo tales condiciones. El tipo de financiamiento que interesaba Colón para adquirir el vehículo era claramente una parte esencial en la contratación llevada a cabo. El financiamiento en sí mismo formó parte de uno de los elementos esenciales del contrato en cuestión, esto es, su causa. No se trataba de una mera preferencia de Colón, en ausencia de la cual éste también hubiese prestado su consentimiento al contrato. Adviértase que la distinción entre uno u otro tipo de financiamiento conllevaba no sólo una diferencia sustancial en la cantidad de dinero que se habría de desembolsar como pronto, lo cual afectaba la liquidez del negocio de Colón, sino que también significaba una variación en las prestaciones de todas las partes. Bajo el arreglo de arrendamiento financiero, Colón no sólo no tenía que dar dinero en pronto, sino que tampoco podía ser considerado como comprador y dueño del vehículo en cuestión. En el contrato de venta a plazos, evidentemente, Colón como comprador pasaba a ser dueño del auto con todas las implicaciones que ello conllevaba. Esto precisamente fue lo que quería evitar Colón al expresar y acordar específicamente que el financiamiento debía llevarse a cabo con Velco, por medio de la figura del contrato de arrendamiento financiero. Así lo determinó el tribunal de instancia y el foro apelativo no podía revocar esa conclusión de hecho, en ausencia de prejuicio, pasión o error. *Pueblo v. Torres Rivera*, 137 D.P.R. 630 (1994); *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. 49 (1991).

En el caso de autos, pues, se infiere claramente que Promo engañó a Colón al momento de la formación del contrato, con respecto a una de sus condiciones esenciales, a

saber: el financiamiento.(²) Por ello, tenemos aquí una situación de dolo causante que produce la nulidad del contrato. Además, Promo incurrió en dolo en el cumplimiento de su obligación, pues consciente e intencionalmente envió simultáneamente ambos contratos y cobró el cheque otorgado, a sabiendas de que ello no era lo convenido y que ello podía afectar la liquidez del negocio de Colón. Esto conlleva necesariamente la indemnización por Promo de los daños y perjuicios que razonablemente podía preverse que habrían de sufrir los demandantes, a causa de ese incumplimiento.

No podemos pasar por alto que, tal como en el caso de autos, es común que personas ocupadas con sus negocios acudan a los establecimientos de venta de autos los sábados, día en que las instituciones que otorgan todo tipo de financiamientos se encuentran cerradas al público. También es común que quienes se dedican a vender vehículos de motor traten de lograr que el cliente adquiera de inmediato el vehículo que interesa y que intenten persuadirlo a ello bajo la promesa de que luego se le permitirá buscar un financiamiento con los términos que el comprador desea.

También debe tenerse en cuenta que contemporáneamente existe mucha competencia entre el gran número de instituciones que otorgan financiamiento para estos fines, y que las diferencias significativas que existen entre los distintos tipos de financiamientos disponibles se ha convertido en un elemento central en la compraventa de vehículos de motor, particularmente para comerciantes como Co-

---

(²) En el caso de autos, el dolo puede inferirse de ciertos hechos previamente relatados, tales como:

1. Promo engañó a Colón al hacerle creer que el contrato de ventas al menor firmado en blanco no sería enviado al Citibank hasta tanto Velco denegara el contrato de arrendamiento financiero interesado;

2. Promo engañó a Colón al prometerle que retendría el cheque otorgado en calidad de pronto sin cobrar, y

3. Promo engañó a Colón al asegurarle que el financiamiento con Velco sería el primero en tramitarse y que la predilección de este último con respecto al tipo de negocio jurídico que había de realizarse sería respaldada.

lón, para quienes la liquidez cotidiana de su propio negocio es un aspecto crucial de éste.

Finalmente, también debe tenerse en cuenta la necesidad que existe de proteger al consumidor en casos de contratos como el de autos, que de ordinario son la parte más débil en este tipo de transacción.

En el caso de autos, el tribunal de instancia no sólo determinó que medió dolo en la contratación y ejecución del contrato sino que, además, concluyó que el cobro anticipado del cheque de Colón ocasionó que los demandantes se sobregiraran en su cuenta, lo que tuvo el resultado de afectar su historial de crédito, hasta el punto en que el Citibank ejecutó en su contra la garantía que había emitido antes. No surgen del expediente razones suficientes para intervenir con las referidas determinaciones del foro de instancia.

 No obstante, sí estimamos que la cuantía de $8,000 concedida por el tribunal sentenciador en concepto de daños es exagerada. Es norma reiterada que la indemnización como resarcimiento de un daño no puede convertirse en una sanción punitiva. *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987); *Rivera v. Rossi*, 64 D.P.R. 718 (1945). Es por ello que intervendremos con la adjudicación de daños siempre que ésta sea extremadamente baja o exageradamente alta. *Urrutia v. A.A.A.*, 103 D.P.R. 643 (1975). En el caso de autos, la indemnización por los daños debe reducirse a $3,000.

Por otro lado, al igual que el tribunal de instancia, estimamos que Promo actuó temerariamente. Véanse: Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Revlon v. Las Américas Trust Co.*, 135 D.P.R. 363 (1994). Ante una situación de hechos de la que innegablemente se desprendía la mala fe de Promo, constituye temeridad y frivolidad que esta parte haya ocasionado que los demandantes, tuviesen que instar y llevar esta acción hasta sus últimas

consecuencias. Procede la imposición de $1,500 en concepto de honorarios de abogado.

## III

Por los fundamentos antes expuestos, *se expedirá el auto de certiorari solicitado y se dictará sentencia para revocar la emitida por el Tribunal de Circuito de Apelaciones el 22 de octubre de 1996. Se decretará la nulidad del contrato; se ordenará a Promo la restitución de los $3,900 otorgados en calidad de pronto; se concederá $3,000 a favor de los demandantes en concepto de daños y perjuicios, y se impondrá $1,500 en honorarios de abogado.*(³)

La Juez Asociada Señora Naveira de Rodón disintió sin opinión escrita. El Juez Asociado Señor Rebollo López no intervino.

---

(³) En vista de la conclusión a que hemos llegado, resulta innecesario entrar a considerar los demás argumentos aducidos por la parte demandante.