ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| YAIRELEE SANTIAGO MÉNDEZ<br><br>Recurrida<br><br>V.<br><br>OFERTAS AUTO PR CORP.<br><br>Recurrente | KLRA202400223 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor (DACo)<br><br>Caso Núm.: PON-2023-0004520<br><br>Sobre: COMPRA VENTA DE VEHICULOS DE MOTOR |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico,  27 de junio de 2024.

Comparece ante *nos,* Ofertas Autos PR Corp. (Ofertas Auto o recurrente) mediante una *Petición de Revisión Judicial.* Nos solicita la revocación de una *Resolución* emitida y notificada el 4 de abril de 2024 por el Departamento de Asuntos del Consumidor, Oficina Regional de Ponce (DACo). Mediante el referido dictamen, el DACo declaró *Ha Lugar* la *Querella* presentada por la señora Yairelee Santiago Méndez (Santiago Méndez o recurrida) en contra de la parte recurrente.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* recurrida.

**I.**

El 17 de agosto de 2023, la señora Santiago Méndez presentó una *Querella* ante el Departamento de Asuntos del Consumidor contra Ofertas Autos PR Corp. (Ofertas Auto) y Popular Auto, LLC (Popular Auto).[1] En ajustada síntesis, alegó que el 8 de julio de 2022

---

[1] Apéndice de la parte recurrente, págs. 1-6.

Número Identificador

SEN2024_____

compró un vehículo de motor Toyota modelo C-HR 2018 por la cantidad de $24,595.00. Indicó que adquirió la unidad vehicular mediante un acuerdo de financiación con el Banco Popular. No obstante, aseveró que el 12 de mayo de 2023 advino en conocimiento de que su vehículo no tenía piezas originales. Argumentó que no hubiera comprado dicho vehículo de conocer ese aspecto. Por lo anterior, solicitó el saldo del balance de financiación y la devolución del dinero depositado para la adquisición de la unidad vehicular.

En respuesta, el 9 de octubre de 2023, Ofertas Auto sometió su *Contestación a la Querella.*[2] En esencia, adujo que en mayo de 2023, la querellante solicitó que las piezas del vehículo fuesen reemplazadas. Mencionó, además, que ésta posteriormente acudió a la Unidad de Vehículos Hurtados donde inspeccionó su automóvil. Luego de dicho trámite, indicó que el 19 de mayo de 2023 suscribió el siguiente acuerdo:

> Por este medio deseo informar que Ofertas Auto PR, mediante representación del Sr. Rionald Rivera Torres, se hace responsable del cambio de piezas del vehículo Toyota C-HR, 2018, tablilla IZ0-349, Serie NMTKMBX5JR052496, para completar el registro de las nuevas piezas.

> Estando así conforme la Sra. Yairelee Méndez con el trámite de reasignar las piezas del vehículo.[3]

En vista de ello, señaló que la querellante formalizó libre y voluntariamente el precitado acuerdo. En otros extremos, levantó como defensas afirmativas la doctrina de actos propios y manos libres. Argumentó, a su vez, que la *Querella* presentada no justifica la concesión de remedios.

Así las cosas, el 3 de noviembre de 2023, el DACo celebró una vista administrativa en la cual comparecieron la señora Santiago

---

[2] Apéndice de la parte recurrente, págs. 8-11.
[3] Apéndice de la parte recurrente, pág. 9 y 12.

Méndez por derecho propio, Ofertas Auto y Popular Auto acompañados de sus representantes legales.[4]

Luego de evaluar la prueba admitida en evidencia, el 4 de abril de 2024, la agencia recurrida emitió una *Resolución* en la cual declaró *Ha Lugar* la *Querella* presentada en contra de las entidades recurrentes. Al respecto, formuló las siguientes determinaciones de hechos:

> 1. El 8 de julio de 2022 la querellante, Yairelee Santiago adquirió el vehículo de motor usado Toyota modelo CHR del año 2018 en Ofertas Auto PR Corp. en Ponce, Puerto Rico por la cantidad de $24,595.00 y entreg[ó] en "trade in" un vehículo que anteriormente había adquirido en este mismo dealer, marca Hyundai, Modelo Elantra del año 2017, por el cual obtuvo un crédito de $15,544.00, según surge de la orden de compra.
>
> 2. La querellante indica que Ofertas Auto PR le aprobó la adquisición del vehículo por lo que ella procedió a probar el mismo e indicó que se sentía bien.
>
> 3. La querellante firmó documentos de financiamiento, seguro, orden de compra y un documento que certificaba que el baúl no estaba funcionando ni las luces por el equipo de música y que aceptaba la guagua aún [sic] sabiendo esto.
>
> 4. La querellante indica que, al momento de la compra del vehículo, la querellada Ofertas Auto PR, nunca le indicó que ese vehículo había sido chocado.
>
> 5. Luego de diez (10) meses con el vehículo, para el 12 de mayo de 2023, la querellante visitó un dealer en Caguas e intentó dar el vehículo en "trade in". Es en ese dealer quien le indican a la querellante, que el vehículo tenía piezas que no le pertenecían.
>
> 6. La querellante afirma que ese mismo día (12 de mayo de 2023) fue a Ponce y visitó el dealer Auto Ofertas PR para indicarle al vendedor Francisco Barrios y al Sr. Rionald Rivera que el vehículo contenía piezas que no le pertenecían
>
> 7. La querellante afirma que el Sr. Rionald Rivera verificó el vehículo y le notificó que todo en el vehículo estaba bien y en orden. Ante esto la querellante les solicitó una certificación a esos efectos, pero nunca le entregaron la misma.
>
> 8. La querellante afirma que el lunes próximo ella llamó al Sr. Rionald Rivera y este le indicó que no le podía dar

---

[4] Tal información surge de la relación de hechos contenida en el dictamen administrativo emitido el 4 de abril de 2024. Véase Apéndice de la parte recurrente, pág. 16

la certificación, porque no se trata de un vehículo que ella adquiriera en ese momento.

9. Al no recibir la certificación, la querellante, procedió a obtener una cita en Vehículos Hurtados para poder verificar que en efecto todo se encontraba bien con el vehículo.

10. La querellante siega que, en Vehículos Hurtados en Ponce, el agente Alvarado inspección[ó] el vehículo y le indicó que tenían que quedarse con el vehículo por que ten[í]a piezas mutiladas, que no eran del mismo y le pasó el caso al agente León. La querellante les indicó que ella desconocía sobre eso, que el vehículo había sido comprado en el dealer Oferta Auto PR Corp. y que nunca le indicaron que había sido chocada anteriormente; luego de esto el agente León llam[ó] al dealer.

11. EI Sr. Rional Rivera, representante de la parte querellada indica que el oficial León de vehículos hurtados le indicó que tenían que cambiar las piezas para que la querellante pudiera reasignar las piezas en CESCO al ser la dueña del vehículo.

12. El 19 de mayo de 2023 la querellante firmó documento en el dealer Ofertas Auto PR Corporación de que estaba de acuerdo en que se reasignaran las piezas del vehículo, autorizando al dealer a llevárselo para el cambio de piezas. El dealer le entregó un vehículo a la querellante para su uso, mientras llevaba el vehículo al taller para cambio de piezas y pintura para que luego se pudieran reasignar los números de las piezas del vehículo en CESCO.

13. Luego que la parte querellada cambiara las piezas, la querellante reasignó ante CESCO las nuevas piezas.

14. La querellante indica que luego que se reasignaran las piezas, el dealer evaluaría tomar el vehículo en "trade in", pero que nunca eso ocurrió.

15. La querellante alegó en la vista administrativa que luego de reasignar las piezas visit[ó] un dealer Toyota auscultando la posibilidad de dar el vehículo en "Trade in" e indica que solo le ofrecieron trece mil dólares ($13,000.00) por el vehículo, según ella, por aparecer en sistema que había sido chochado anteriormente y por ser tanta la cantidad que todavía debía el vehículo. La querellante indica que nadie le quiere dar lo que debe.

16. En la vista administrativa la parte co-querellada Popular Auto pidió la desestimación en su contra por no existir una reclamación en su contra en esta querella. Tanto la querellante, como la parte co-querellada Ofertas Auto PR Corp. estuvieron de acuerdo y no se opusieron.

17. La solicitud de la querellante, según ésta sigue siendo la presentada al momento de la presentación de la querella. Es decir, solicitud de devolución del dinero pagado por la unidad y el saldo del balance de la unidad

financiada por la Popular Auto, junto a todo lo que proceda en derecho.[5]

Así expuesto, el DACo concluyó que Ofertas Auto incumplió con su deber de informar a la parte recurrida la verdadera condición del vehículo. Ante tales hechos, resolvió que su consentimiento estuvo viciado al momento de la adquisición del automóvil. Por lo anterior, decretó la nulidad del contrato de compraventa, y en efecto, dispuso su resolución. Ordenó, también, la devolución del anterior vehículo objeto del arreglo *trade in,* y en caso de no tener tal unidad, regresar la cuantía correspondiente a su valor ($15,544.00). A su vez, requirió la devolución del pago de mensualidades depositadas a favor de Popular Auto.

Inconforme con el dictamen agencial, el 1 de mayo de 2024, Ofertas Auto acudió ante *nos* mediante una *Petición de Revisión Judicial.* En su recurso, señala la comisión de los siguientes errores:

**ERRÓ EL DACO AL CONCLUIR QUE LA RECURRENTE INCURRIÓ EN DOLO GRAVE QUE DA LUGAR A LA RESOLUCION DEL CONTRATO ENTRE LAS PARTES, YA QUE EL CONTRATO FUE CONFIRMADO POR LA RECURRIDA.**

**ERRÓ EL DACO AL DECLARAR HA LUGAR LA QUERELLA Y ORDENAR LA CANCELACIÓN DEL CONTRATO DE VENTA AL POR MENOR A PLAZOS CON POPULAR AUTO, LA DEVOLUCIÓN DEL VEHÍCULO ENTREGADO EN "TRADE IN", O EL VALOR DE ESTE AL MOMENTO DE LA COMPRAVENTA, LA DEVOLUCIÓN DE LAS MENSUALIDADES PAGADAS POR LA RECURRIDA Y EL RELEVO DEL CONTRATO DE VENTA AL POR MENOR A PLAZOS.**

El 6 de mayo de 2024, este Tribunal emitió una *Resolución* en la cual ordenó a la parte recurrida a presentar su posición dentro del término de veinte (20) días contados a partir de la notificación. El 7 de mayo de 2024, la parte recurrente presentó una *Certificación de Notificación.* El 14 de mayo de 2024, la representación legal de la parte recurrente presentó una *Moción Notificando Período de*

---

[5] Apéndice de la parte recurrente, págs. 2-4.

*Vacaciones.* Así, transcurrido el término concedido a la parte recurrida sin que esta haya comparecido, pasamos a resolver.

**II**.

**A. Revisión judicial de las determinaciones administrativas**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección*, 174 DPR 247, 254-255 (2008).

La Sección 4.1 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9671). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson y otros v. Consejo de Titulares y otros*, 2024 TSPR 64, 213 ___ (2024). Véase, además, *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 590-592 (2020); *Empresas Ferrer, v. ARPe,* 172 DPR 254, 264 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Capote Rivera y otros v. Voilí Voilá Corp. y otros*, 2024 TSPR 29, 213 DPR ___ (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". Íd. Así, la revisión judicial constituye el recurso exclusivo para revisar los

méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra*; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección, *OCS v. CODEPOLA,* 202 DPR 842, 852-853 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super*

*Asphalt v. AFI y otro* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 127 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36-37 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Torres Rivera v. Policía de PR,* 196 DPR 606, 627 (2016). Lo anterior responde a la vasta experiencia y conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).

Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque ésta no tiene que ser la única o la más razonable. *Vargas Serrano v. Inst. Correccional,* 198 DPR 230, 237 (2017). Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923, 940 (2010). Mientras que, las determinaciones de hecho

se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018), las determinaciones de derecho pueden ser revisadas en su totalidad. *Torres Rivera v. Policía* de PR, *supra*, pág. 627.

Si bien es cierto que la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo, *Rebollo v. Y Motors,* 161 DPR 69, 77 (2004), los tribunales revisores descartarán el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía, supra.* Si la interpretación y la aplicación del derecho no es correcta, el foro apelativo está obligado a intervenir. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009). "En esas circunstancias, [el foro apelativo] cederá la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra". *Super Asphalt Pavement, Corp. v. AFI y otros*, 206 DPR 803, 819 (2021). Véase, además, *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Rolón Martínez v. Supte. Policía, supra.*

**B. Derecho de contratos**

El contrato es el negocio jurídico biliteral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Artículo 1230 del Código Civil (31 LPRA sec. 9751). Así, el Artículo 1232 del Código Civil establece que, "[e]s facultativo contratar o no hacerlo, y hacerlo, o no, con determinada persona. Estos derechos no pueden ejercerse abusivamente ni contra una disposición legal. Las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público". (31 LPRA sec. 9753). Lo acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y

ante terceros en la forma que dispone la ley. Artículo 1233 del Código Civil (31 LPRA sec. 9754). En adición, "cuando los términos de un contrato son claros y no crean ambigüedades, estos se aplicarán en atención al sentido literal que tengan". *Corporación del Fondo del Seguro del Estado v. Unión de Médicos de la CFSE*, 170 DPR 443, 450 (2007).

Así pues, el contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Artículo 1237 del Código Civil (31 LPRA sec. 9771). Según establece el Artículo 1271 del Código Civil (31 LPRA sec. 9881), los tratos previos a la perfección del contrato deben desarrollarse conforme a la lealtad y la buena fe entre los probables contratantes. Así, se exige especialmente el deber de colaborar en la formación del contrato, obtener y proporcionar información de circunstancias de hecho y derechos relevantes, mantener la confidencialidad de la información recibida y conservar el bien que será objeto del contrato futuro. Íd.

De otro lado, nuestro ordenamiento jurídico permite que los contratos puedan ser anulados. Así pues, la invalidez es una sanción legal que, mediante una decisión judicial, priva a un negocio jurídico de sus efectos propios por adolecer de un vicio originario, esencial e intrínseco al acto. Artículo 341 del Código Civil (31 LPRA sec. 6311). La invalidez puede invocarse por vía de acción o de defensa. Íd. A su vez, el Artículo 342 del Código Civil (31 LPRA sec. 6312) establece que,

> [e]l negocio jurídico puede ser nulo o anulable.
> Es nulo:
> (a) si el objeto, la causa o el consentimiento son inexistentes;
> (b) si el objeto o la causa son ilícitos;
> (c) si carece de las formalidades exigidas por la ley para su validez; o
> (d) si es contrario a la ley imperativa, la moral o el orden público.

> Es anulable si el otorgante tiene incapacidad de obrar, si concurre algún vicio de la voluntad, o si el acto adolece de un defecto de forma no solemne.

Asimismo, los vicios de la voluntad son el error, el dolo, la violencia y la intimidación. Artículo 285 del Código Civil (31 LPRA sec. 6191). En vista de ello, el negocio jurídico en el que medie un vicio de la voluntad es anulable si el vicio fue determinante para su otorgamiento. Artículo 286 del Código Civil (31 LPRA sec. 6192). Consecuentemente, el causante del dolo, la violencia o la intimidación queda sujeto a la indemnización de los daños y perjuicios resultantes. Íd. En el caso de error, la parte que lo invoca debe restituir los gastos incurridos por la parte que no incurrió en el error. Íd. La prueba de la existencia del vicio y de su carácter incumbe a quien lo alega. Íd.

A tales efectos, el dolo se entiende como un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a resumirse el estado de ánimo de aquel que no solo ha querido el acto, sino que, además, se ha previsto y querido las consecuencias antijuridicas provenientes de él. *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 666 (1997). El dolo grave es la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. Artículo 292 del Código Civil (31 LPRA sec. 6211). El dolo grave es el que causa, motiva, sirve de ocasión y lleva a celebrar el contrato, de modo tal que, sin él, este no se hubiera otorgado. *Colón v. Promo Motor Imports, Inc.*, *supra*.

Mientras, el dolo incidental es aquel cuya existencia no produce la nulidad del contrato, sino que se limita a obligar al que lo empleó, a indemnizar el daño causado. Artículo 294 del Código Civil (31 LPRA sec. 6213). Ello es así, ya que este tipo de dolo no tiene una influencia decisiva en la esencial de la obligación. *Colón v.*

*Promo Motor Imports, Inc., supra.* En el dolo incidental, contrario al dolo causante, existe la voluntad de contratar del perjudicado, pero hay engaño en el modo en que se celebra el contrato. Íd.

Los efectos contrapuestos de cada tipo de dolo son notables. Es decir, mientras que el dolo causante produce la nulidad del contrato, el incidental permite únicamente la indemnización por daños y perjuicios. *Colón v. Promo Motor Imports, Inc., supra.* Así pues, resulta menester señalar que los dos tipos de dolo vician el consentimiento en el origen o en la formación del contrato, esto es, en la etapa de la contratación. Íd.

**III.**

En el recurso de epígrafe, la parte recurrente planteó que erró el DACo al concluir que incurrió en dolo grave que da lugar a la resolución del contrato entre las partes, ya que el contrato fue confirmado por la recurrida. Asimismo, sostuvo que incidió el DACo al declarar ha lugar la *Querella* y ordenar la cancelación del contrato de venta al por menor a plazos con Popular Auto, la devolución del vehículo entregado en "trade in", o el valor de este al momento de la compraventa, la devolución de las mensualidades pagadas por la recurrida y el relevo del contrato de venta al por menor a plazos.

De una revisión del expediente ante *nos*, específicamente de las determinaciones de hechos de la *Resolución* recurrida surge que, en ningún momento la parte recurrente le indicó a la recurrida que el vehículo había sido chocado, ni que tenía piezas que no le pertenecían. La parte recurrente solo le informó sobre unos problemas con las luces y el baúl por causa del equipo de música.

Consecuentemente, luego de transcurridos diez (10) meses de uso del vehículo la parte recurrida intentó dar el mismo en "trade in" en otro concesionario y es cuando adviene en conocimiento de que el vehículo que había comprado contenía piezas que no correspondían al mismo, por haber sido chocado. Acorde a ello, la

KLRA202400223                                                        13

recurrida acudió a Auto Ofertas para indicarle al vendedor Francisco Barrios y a Rionald Rivera que el vehículo contenía piezas que no le pertenecían. Así las cosas, Rionald Rivera verificó el vehículo y le indicó que todo en el vehículo estaba bien y en orden. Por lo cual, la recurrida les solicitó una certificación a esos efectos, la cual nunca recibió.

Posteriormente, la recurrida acudió a la oficina de Vehículos Hurtados para verificar que en efecto todo se encontraba bien con el vehículo. Entretanto, en Vehículos Hurtados el agente Alvarado inspeccionó el vehículo y le indicó que tenían que quedarse con el vehículo por que tenía piezas mutiladas, que no eran del mismo y le pasó el caso al agente León. Luego, el agente León le indicó a Rionald Rivera que tenían que cambiarle las piezas al vehículo para que la recurrida pudiera reasignar las piezas en CESCO, al ser la dueña del vehículo. Ulteriormente, la recurrida autorizó a la recurrente a la corrección de las piezas a su costo. No obstante, decidió presentar la *Querella* ante el DACo; en la cual dejó claro que de haber sabido al momento de la compra que el vehículo había sido chocado no habría adquirido el mismo.

Nuestro ordenamiento jurídico establece que, en el caso de la venta de un vehículo usado, cuando el vendedor le oculta al comprador que el vehículo fue impactado y reparado antes de la compra, se incumple una condición esencial para la venta válida de un vehículo de motor. *Bosques Soto v. Echevarría,* 162 DPR 830 (2004). Por lo cual, la parte vendedora actúa de manera dolosamente grave viciando así el consentimiento del comprador, lo cual conlleva la nulidad del contrato. Íd. No debemos obviar que, el dolo grave es la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. Artículo 292 del Código Civil, *supra.*

De conformidad con los hechos aquí reseñados, y acorde con el marco jurídico enunciado, procede que confirmemos la determinación emitida por el DACo. Esto, pues la determinación del DACo de anular el contrato se sostiene de la prueba presentada y está correctamente aplicada al derecho vigente.

Indiscutiblemente, el dolo que permea en la controversia ante *nos* es el dolo grave, pues la parte recurrida enfatizó que de haber sabido al momento de la compra que el vehículo había sido chocado no habría adquirido el mismo. Finalmente, reiteramos que el DACo decretó correctamente la resolución del contrato de compraventa del vehículo en controversia. La parte recurrente incumplió con su deber de informar a la parte recurrida la verdadera condición del vehículo al momento de pactarse la compraventa.

**IV.**

Por los fundamentos que anteceden, *confirmamos* el dictamen administrativo recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones