Francisca A. Rivera Viuda de Hernández, demandante y apelada, *v.* Felipe Hernández Rivera y Mercedes González, demandados y apelantes.

No. 5894.—*Sometido:* Diciembre 13, 1932. *Resuelto:* Enero 11, 1933.

*L. Mercader,* abogado de los apelantes; *Diego E. Ramos,* abogado de la apelada.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

La demandante Francisca A. Rivera viuda de Hernández vendió a su hijo Felipe Hernández Rivera, por el precio de $1,500, una finca rústica denominada Dos Bocas, radicada en el barrio Río Arriba, de Arecibo, de cuyo precio el demandado quedó adeudando a la demandante la suma de $570, para garantir la cual constituyó hipoteca voluntaria sobre la finca que comprara, en favor de su madre. Alega la demandante que el día 7 de marzo de 1930 el demandado Felipe Hernández Rivera, manifestando que la Puerto Rico Relief Commission exigía como condición para darle un préstamo refaccionario la cancelación de la hipoteca que había constituído sobre la finca en favor de la actora, recabó de ésta que la cancelara, prometiendo entregarle los $570 importe

del crédito hipotecario en la siguiente forma: $270 en metálico y $300 en un pagaré.

Se alega que estas manifestaciones son insidiosas y que por medio de las referidas maquinaciones y palabras insidiosas, a las cuales dió crédito la demandante por tener fe en su hijo en aquella época, el demandado logró la cancelación del crédito hipotecario, despojando a la actora del mismo, sin que mediara causa válida para la escritura de cancelación de hipoteca. Se dice en la demanda que el demandado, una vez obtenida la escritura, se negó a entregar los $270 convenidos y que además se apoderó del pagaré, despojando a la demandante de todo el importe de dicho crédito hipotecario.

El demandado en su contestación niega las alegaciones de la demanda y alega que, habiendo satisfecho a la demandante el total de su crédito hipotecario y necesitando liberar la finca de gravámenes para solicitar un préstamo de la Comisión Rehabilitadora, ambas partes se trasladaron a la oficina del Lcdo. Susoni, donde la demandante le otorgó la correspondiente cancelación, por haber recibido el total de la suma que le debía el demandado, y con el fin de que se evitase el tener que recurrir a la Comisión Rehabilitadora después de practicada la cancelación la demandante ofreció al demandado la cantidad de $270, suma que éste recibió y aceptó, suscribiendo un pagaré a favor de la demandante que ésta tiene en su poder.

La corte inferior declaró con lugar la demanda, decretando la nulidad de la escritura de cancelación y de la inscripción de dicho documento en el registro de la propiedad, quedando subsistente la hipoteca a favor de la demandante e imponiendo costas y honorarios de abogado al demandado. Cinco son los errores que se atribuyen a la corte inferior en el presente recurso. El primer error atribuído a la corte inferior se basa en que ésta debió haber declarado que la demanda no aduce hechos suficientes para determinar una causa de acción.

■ Hemos transcrito las alegaciones esenciales de la demanda. Vemos que la demandante alega que el demandado, con palabras y maquinaciones insidiosas, logró que ella cancelase su crédito hipotecario. Vemos además que dicho demandado no le entregó los $270 que prometiera pagarle, que se negó a cumplir lo convenido, y que la demandante autorizó la cancelación confiando en la entrega del dinero y en la verdad de las representaciones del demandado. Surge, a nuestro juicio, de la faz de la demanda que la demandante fué víctima de un engaño y que, como consecuencia del mismo, consintió en cancelar el crédito hipotecario. Las relaciones que median entre las partes que intervinieron en esta transacción son de tal naturaleza que la alegación de que el demandado recabó la cancelación manifestando que había que liberar la finca para obtener un préstamo de la Comisión Rehabilitadora adquiere fuerza y vigor cuando se piensa que se trata de un ruego dirigido por el interesado a su propia madre.

El artículo 1221 del Código Civil, edición de 1930, dice que hay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes es inducido el otro a celebrar un contrato que sin ellas no hubiera hecho. En la demanda se dice, usando las palabras del Código, que el demandado se valió de palabras y maquinaciones insidiosas para obtener la cancelación del crédito hipotecario.

Manresa, comentando el artículo 1269 del Código Civil Español, equivalente al 1221 de nuestro Código, dice que la esencia de esta especie de dolo se encuentra en el engaño que obtiene un consentimiento del engañado, arrancándolo, o a lo menos influyendo en él. Apunta el ilustre comentarista que es esto lo que quieren indicar las palabras "maquinaciones insidiosas" a que se refiere la ley, entre las cuales está comprendido, entre otros, "el abuso de la confianza y las mil formas, en suma, del engaño que pueden alucinar a un contratante, produciendo un consentimiento viciado, sin que sea necesario que aquéllas lleguen a constituir estafa, ni

entrar bajo otro concepto en la esfera propia del Código Penal."

Scaevola, comentando el mismo artículo, copia la definición que de dolo nos ofrecen el derecho romano, las Partidas, y algunos códigos modernos, y dice: "En el fondo de todos los conceptos late la misma idea: engaño a una de las partes por artificios o medios falaces que impulsan a la otra a celebrar un contrato convencida de la bondad del mismo en vista de lo manifestado o hecho por su cootorgante. Dolo malo, según el derecho romano, es toda astucia, mentira o maquinación empleada para sorprender, engañar o defraudar a otro."

Es prácticamente la misma definición de las palabras insidia o asechanza: "Engaño o artificio para hacer daño a otro." El Diccionario de la Real Academia Española define así la palabra maquinación: "Proyecto o asechanza artificial y oculta dirigida a un mal fin."

De modo que al decirse que son insidiosas las alegaciones esenciales de la demanda y que con estas palabras y maquinaciones el demandado logró que la demandante cancelara el crédito hipotecario, se está alegando la falsedad de la representación y el engaño y artificio de que se valió Felipe Hernández Rivera para conseguir el mal fin que se proponía. Opinamos que la corte no cometió el error que se le atribuye.

▮ Alega el demandado que la corte inferior cometió error al no declarar con lugar la moción de *nonsuit*. Hemos examinado cuidadosamente la declaración de la demandante Francisca Rivera, sus alegaciones juradas y las que el demandado hiciera también bajo juramento, y creemos que la corte inferior no cometió el error que se le atribuye al declarar sin lugar la moción de *nonsuit*. Si se tienen en cuenta las admisiones del demandado en su contestación y las declaraciones de la demandante, admitiéndolas como ciertas para los efectos de la moción presentada, se concluye fácilmente que la moción de *nonsuit* no procede y que la corte actuó acertadamente al declararla sin lugar.

Se alega por el demandado que la corte erró al declarar con lugar la demanda, afirmando que existe fraude en el otorgamiento de la escritura de cancelación y que para ello se obtuvo el consentimiento de la demandante por medio de las maquinaciones insidiosas y engaños de ambos demandados, quienes según el tribunal, no han pagado a la demandante ni el importe de la hipoteca ni suma alguna. Se alega además que la corte cometió un error grave y manifiesto al apreciar la evidencia, deduciendo de la misma conclusiones fatalmente contrarias a derecho. En primer lugar queremos hacer constar que la corte inferior no se refiere a ambos demandados cuando habla de maquinaciones insidiosas y engaños, sino exclusivamente al demandado Felipe Hernández Rivera. En la opinión de la corte inferior no se menciona a Mercedes González sino para decir que es esposa del demandado. En realidad la opinión de la corte inferior no hace cargo alguno a la referida señora y la sentencia dictada no le afecta en ninguno de sus pronunciamientos.

Discutiremos ahora los errores tercero y cuarto que acabamos de transcribir. Como hemos visto, en la demanda se alega que el demandado Felipe Hernández Rivera, por medio de palabras y maquinaciones insidiosas, logró que la demandante le cancelase el crédito hipotecario. Francisca Rivera declara que su hijo le dijo que le cancelara la hipoteca para hacer un negocio con la Comisión Rehabilitadora. En su contestación alega el demandado que necesitando liberar la finca de gravámenes para solicitar un préstamo de la Comisión Rehabilitadora, él y su madre se trasladaron a la oficina del Lcdo. Susoni, donde se otorgó la escritura de cancelación. El importe del crédito cancelado no se pagó en presencia del notario autorizante. Dicho importe, ascendente a $400, fué pagado, según el demandado, el mismo día de la cancelación, por la mañana, como entre 6:30 ó 7. El demandado explica que obtuvo este dinero de la propiedad, del fruto de café y varios cerdos que vendió y dice que recogió este dinero para pagarle a su madre y luego pasar la finca a la Rehabilitadora.

Según el demandado, la madre, al recibir el dinero, distribuyó $100 entre sus hijos, se quedó con $30 y le dió $270 a Mercedes, su esposa, para que se los guardara. Agrega el demandado que la madre insistió en que no llevara la finca a la Rehabilitadora y le dijo: "Yo le dí a guardar a Mercedes $270 y te los voy a dar sin intereses." El demandado le dijo a su madre que la Rehabilitadora no le cobraba intereses. La madre le prometió no cobrarlos tampoco y entonces desistió de llevar a cabo el préstamo. Todo esto ocurrió el mismo día y horas antes de otorgarse la cancelación. La madre, en este corto intervalo de tiempo, regaló parte del dinero, retuvo $30 para sus gastos, le dió a guardar $270 a su nuera y luego le prestó esta misma suma a su hijo. Esta declaración de Felipe Hernández está en pugna abierta con las alegaciones de su contestación. En su contestación jurada dice el demandado que la madre, con el fin de que se evitase el tener que recurrir a la Comisión Rehabilitadora, después de practicada la cancelación, le ofreció la cantidad de $270, suma que aceptó. En su declaración el demandado habla de las negociaciones que dice haber llevado a cabo con la madre entre 6 y 7 de la mañana el mismo día de la cancelación, y agrega que en el camino ella insistió en sus propósitos de entregarle el dinero sin intereses y el demandado desistió de llevar la finca a la Rehabilitadora. El pagaré suscrito en la oficina del abogado Susoni cuando se hizo la cancelación demuestra claramente que el otorgamiento de este documento era cosa convenida de antemano entre las partes. Llama la antención el hecho de que Felipe Hernández Rivera, que solicitaba la cancelación de la hipoteca para hacer un préstamo, tuviese en su poder la cantidad de $400 y se desprendiera de esta suma para pagar una deuda que no estaba vencida y de la cual era acreedora su propia madre. Si es verdad que la madre le prestó $270 sin intereses, y que entonces el demandado desistió del préstamo a la Comisión Rehabilitadora ¿por qué se hizo la cancelación total cuando ya el demandado había realizado su propósito, que era obtener el préstamo sin inte-

reses? ¿A qué insistir en que se cancelara totalmente el crédito hipotecario? Leyendo la declaración del demandado nos explicamos perfectamente que la corte inferior no diera crédito alguno a su testimonio. Francisca Rivera declara que su hijo le ofreció que si le cancelaba la hipoteca le daría $270 en dinero y $300 en un pagaré, que canceló la hipoteca y no ha recibido ni un centavo de su hijo, que hasta los $300 que le dió éste cuando le vendió la finca, se los quitó para ponerlos en el banco y no sabe qué negocio hizo con ellos; que el día que se canceló la hipoteca el notario Susoni le entregó un pagaré que allí se hizo; que después de haber salido de la oficina Felipe le quitó el documento para llevarlo, porque la demandante no tenía cartera ni nada, y ahora le ha negado el pagaré; que cuando llegó a su casa le dijo a la señora de Felipe que le buscara el pagaré y le contestó que no sabía dónde Felipe lo había puesto, y le dijo a éste que le diera el pagaré y le contestó que lo tenía en el baúl, que le pidió el pagaré a la esposa de Felipe porque ésta guardaba los documentos del marido; que ha pedido que se le pague o se le entregue el documento y que no se le ha pagado ni un centavo ni se le ha devuelto el pagaré; que cuando vino a cancelar la hipoteca tenía muy buenas relaciones con su hijo y que ahora no, por lo que ha resultado, que no vive con él, que después que a uno le pasan estos episodios es muy fuerte vivir; que tenía fe en que su hijo le entregaría el dinero el día que canceló la hipoteca, y que si no hubiera sido así no hubiera ido a cancelarla.

No surge de la prueba la suerte que ha corrido el pagaré otorgado en la oficina del abogado Sr. Francisco Susoni. El demandado declara que una vez se le presentó su hermano menor con el pagaré a vendérselo y el demandado, temeroso de que le cobraran el documento sin él tenerlo, vino a Arecibo con su hermano a consultar con el Sr. Susoni. En efecto, el Sr. Susoni declara que el demandado estuvo en su oficina acompañado de otra persona que dijo ser su hermano y le enseñó el pagaré y preguntó qué debían hacer con él, con-

testándole el testigo que ese documento era de la propiedad de la señora y que se le debía entregar para conservarlo y al vencimiento ejercer su cobro. Es de notarse que el Sr. Susoni, cuando en las preguntas que se le hacen se le llama hermano a la persona que acompañaba al demandado, tiene especial cuidado en repetir con insistencia que Felipe Hernández le llamaba hermano, pero que él no lo conocía. Este hermano de que habla el demandado no compareció a declarar durante el juicio. El demandado admite que el día en que se otorgó la escritura de cancelación la demandante le entregó el pagaré, porque no tenía cartera, pero agrega que se lo devolvió cuando, como de costumbre, se quitó el gabán donde lo guardaba. No cabe argüir que la pérdida del pagaré no perjudica a la demandante y que no hubo propósito de fraude, toda vez que el demandado reconoce la existencia del documento y admite que no ha pagado. Esta admisión en el acto del juicio, bajo la presión de las circunstancias, cuando estaba allí el notario que hizo el pagaré, no basta para cohonestar los actos previos del demandado. Si éste, aceptando que poseía el pagaré, lo hubiese ofrecido como prueba sin explicar satisfactoriamente su posesión y justificar el pago, no habría hecho otra cosa que confirmar lo alegado y declarado por la demandante. Su actitud en este respecto está en armonía con todos sus actos en el curso de la transacción. En cuanto a la suma consignada en dicho documento, la demandante dice que debieron ser $300, el demandado alega que fueron $270 prestádosle después de la cancelación, y el notario Sr. Susoni no se acuerda de la cantidad.

De la opinión emitida por la corte inferior copiamos lo que sigue:

"No existe duda alguna respecto a la cancelación de la hipoteca de $570 por parte de doña Francisca A. Rivera viuda de Hernández, ya que se ha presentado por ella misma la escritura de dicha cancelación. Pero analizando profundamente la evidencia testifical aportada por ambas partes, el juzgador se inclina a conceder mayor crédito a la presentada por la demandante que a la del demandado. Y ello es

así, porque la demandante trae ante el tribunal una teoría verosímil con visos de certeza y factible dentro de la lógica que rige los acontecimientos humanos, y sobre todo la confianza que se supone existe entre una madre y un hijo; mientras que la teoría aportada por el demandado, es, no sólo inverosímil, sino a todas luces nebulosa y al margen de la razón que inspira los actos de las personas. La Corte ha concedido entera credibilidad al testimonio de doña Francisca A. Rivera viuda de Hernández porque el juez no puede concebir que una señora que cuenta setenta años de edad, una anciana venerable, urda una trama para, después de obtenido el pago de una suma debídale por su hijo, comparecer ante un tribunal de justicia y, con gran serenidad e impertubable, exponer bajo juramento haber sido víctima de ciertas maquinaciones por parte de su propio hijo tendientes a defraudarla. Para percatarse que esta anciana estaba exponiendo la verdad, bastaba solamente contemplarla mientras testificaba. Porque, a pesar que los azares de la vida la precisaron a litigar contra su hijo, cada vez que miraba a éste, la ternura asomaba a sus ojos.

"* * * * * * *

"Por otro lado, la teoría presentada por el demandado, según decimos antes, es obscura e indigna de credibilidad, porque no nos explicamos cómo si Felipe Hernández Rivera estaba en tal situación económica que se proponía efectuar un préstamo con la Comisión Rehabilitadora, tuviese $400 en su poder para pagarlos a su señora madre sobre la mesa de su casa el día 7 de marzo de 1930, antes de venir a otorgar la escritura de cancelación en Arecibo. Estamos seguros que esa manifestación del demandado es completamente incierta, porque de haber él tenido esos $400, no hubiese pensado en efectuar préstamos, ni menos se los hubiese pagado a doña Francisca, ya que él tenía un margen tan amplio para satisfacer su deuda con ella, a razón de $100 anuales hasta el año 1933.'

La corte a quo dió completo crédito a la declaración de la demandante Francisca Rivera. El abogado del demandado arguye en su alegato que la demandante aceptó haber otorgado voluntariamente la escritura de cancelación y admite que convino con su hijo en que la obligación del crédito hipotecario sería cambiada o sustituída por otra mediante la cual Felipe Hernández le había de pagar $270 en efectivo y el resto en un pagaré por $300 que se otorgó y recibió la demandante. Se cita en apoyo de esta contención el caso de *Marrero* v. *Sucesión Marrero*, 36 D.P.R. 629. La doctrina

sentada en esta decisión es inaplicable al presente caso. En *Marrero* v. *Sucesión Marrero, supra,* se canceló un crédito hipotecario de $2,000. Se otorgó un documento privado de $4,500 a favor de los acreedores hipotecarios, autorizado por sus deudores. La corte sentenciadora aceptó como cierta la explicación de los demandados de que dicho documento privado se firmó el mismo día que la escritura de carta de pago y cancelación de hipoteca, consignando en él una deuda simulada, para que el demandante Marrero, que era padre político de la viuda de Wenceslao Marrero y abuelo de los otros demandados, los demandara y embargara las fincas caso de que los otros acreedores de la sucesión, al saber que las dichas fincas quedaban libres de la hipoteca que sobre ellas pesaba, les reclamaran judicialmente sus créditos. Por censurable que pudiera ser la conducta de los demandados en este caso y de los propios demandantes, la verdad es que de acuerdo con la apreciación de la prueba por la corte sentenciadora, los demandados no le debían un centavo a los demandantes. Esta corte, sin embargo, examinando el caso desde el punto de vista de la teoría de los demandantes, se expresó en estos términos:

"Si la teoría de los demandantes expresada por su abogado en el juicio al presentar el documento privado de que se trata era cierta, entonces lo que se hizo fué sencillamente sustituir la obligación de pagar dos mil dólares en plazos anuales de quinientos, contraída por el causante de los demandados, por la de pagar cuatro mil quinientos en plazos anuales de doscientos cincuenta, contraída directamente por los demandados. La cancelación quedaba explicada. Eso no obstante, trató de sostener el demandante Marrero que firmó engañado la escritura de cancelación.

"*     *     *     *     *     *     *

"Pero aceptando a los fines de este caso simplemente que el documento privado pudiera admitirse como prueba, entonces ¿a qué anular la escritura de carta de pago y condenar a los demandados a pagar la deuda de acuerdo con el contrato original, si el mismo documento revela que la carta de pago fué cierta y no medió engaño sino que lo que se realizó fué un nuevo contrato?"

El presente caso no puede compararse al de *Marrero* v. *Sucesión Marrero*. En aquel caso la corte sentenciadora creyó el testimonio de los demandados. En este caso la corte *a quo,* haciendo un juicioso análisis de la prueba, declara que el demandado no dice la verdad y que la demandante le merece completo crédito. Allí los demandantes alegaron y no probaron que hubiesen sido engañados. En nuestro caso el engaño es manifiesto. La demandante no recibió los $270 en efectivo que se le ofrecieron. El pagaré que se otorgó a su favor no se encuentra en ninguna parte. El demandado aparece disponiendo de la cantidad de $400 y pagando una deuda que no estaba vencida en los momentos en que necesitaba obtener un préstamo de la Comisión Rehabilitadora, y se da el caso de que este demandado, que declara haber recibido de la demandante $270 sin intereses, insista en la cancelación total del crédito hipotecario cuando, de ser ciertas sus manifestaciones, ya tenía en su poder el dinero que le hacía falta y no era necesario obtener ningún préstamo de la referida Comisión. Entendemos que se ha probado en este caso que Felipe Hernández Rivera, con palabras y maquinaciones insidiosas, indujo a la demandante a la cancelación del crédito hipotecario. El engaño de que fué víctima Francisca Rivera produjo un consentimiento viciado y la corte inferior estuvo muy acertada al decretar la nulidad de la cancelación del crédito hipotecario. Francisca Rivera declara que tenía fe en su hijo, en que su hijo le entregaría el dinero el día en que se canceló la hipoteca y que si no hubiera sido así no hubiera ido a cancelarla. Resulta evidente la presencia del dolo causante, sin el cual no se hubiera obtenido el consentimiento. La demandante fué inducida, inspirada y persuadida a consentir por las insidias del demandado. No es éste un caso de morosidad en el cumplimiento de una obligación. El demandado no reconoce deber a la demandante los $270 que éste dice le prometió pagarle inmediatamente y que nunca le entregó, comprometiéndose además a suscribir un documento que después de otorgado no aparece

en ninguna parte. Por el contrario, el demandado sostiene que satisfizo totalmente el crédito hipotecario, y alega que esos $270 le fueron facilitados por la madre después de la cancelación. La falsedad de esta alegación ha quedado demostrada, así como el engaño de que fué victima la demandante.

Alega por último el demandado que la corte inferior cometió error al condenar en costas a la sociedad de gananciales. La sentencia dictada en este caso dice que se imponen las costas y honorarios de abogado al demandado. Es claro que la corte inferior se refiere exclusivamente a Felipe Hernández Rivera y no a su esposa Mercedes González. Mercedes González y Felipe Hernández Rivera no habían contraído matrimonio cuando este último compró la finca y se constituyó el crédito hipotecario a favor de la demandante. No se ha probado que la esposa tuviese intervención en la cancelación de la hipoteca y por lo tanto la corte inferior actuó correctamente cuando se limitó a condenar en costas al demandado, o sea a Felipe Hernández Rivera.

*Debe confirmarse la sentencia apelada.*