ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| YAIMARIE MÁRTIR<br><br>Recurrida<br><br>V.<br><br>VPH MOTOR CORP. h/n/c TRIANGLE DEALER DEL OESTE; FIRST BANK PUERTO RICO; FCA US LLC<br><br>Recurrente | KLRA202400508 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: MAY-2023-0004576<br><br>Sobre: COMPRAVENTA DE VEHÍCULOS DE MOTOR |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Diaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de enero de 2025.

Comparece ante *nos,* VPH Motors Corp. h/n/c Triangle Dealer de Oeste, en adelante recurrente o Triangle, y solicita que revisemos una *Resolución* emitida por el Departamento de Asunto del Consumidor, en adelante DACO, mediante la cual declaró nulo y resolvió un contrato de compraventa y consecuentemente, el de arrendamiento financiero sobre un vehículo marca Jeep, modelo Grand Cherokee, del año 2023, que había sido adquirido por Yaimarie Mártir Vélez, en adelante recurrida o señora Mártir Vélez.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* recurrida.

**I.**

Surge del expediente ante nuestra consideración que, el 25 de agosto de 2023, la señora Mártir Vélez presentó una *Querella* ante el DACO sobre la compraventa de un vehículo de motor. En síntesis, la recurrida alegó que el 24 de abril de 2023 había adquirido una Jeep Grand Cherokee Summit Blanca 2023, 8 cilindros, 4 x 4, edición dark night en Triangle en Mayagüez. Poco después de

haberla comprado visitó Triangle para hacerle una revisión al vehículo por unos ruidos que hacía al girar. Luego de las debidas reparaciones, la recurrente alega haberse percatado que la documentación de la reparación indicaba que el vehículo era un 3.6L, lo que significaba que era un vehículo 6 cilindros y no 8 cilindros.

Adujo que luego de enterarse de esta información, el 13 de junio de 2023, acudió a Triangle donde el gerente general de dicha compañía, el señor Jorge Escudero, en adelante señor Escudero, la atendió. Estando allí, esta le explicó la situación y el señor Escudero le sacó copia a su licencia de conducir y al contrato de compraventa. Este le indicó a la recurrida que estaría comunicándose con ella al día siguiente para tener la oportunidad de verificar la información. Sin embargo, esta alegó que nunca recibió ninguna llamada. Debido a esto, intentó comunicarse en varias ocasiones, pero dichos intentos fueron infructuosos. que nuevamente no nunca fue contestada ni devuelta.

Así las cosas, la señora Mártir Vélez solicitó que el vehículo que compró cumpliera con las especificaciones que ella contaba tuviera el vehículo. Entiéndase, que sea un tope de línea, 4 x 4, 8 cilindros, modelo Summit edición dark night. En la alternativa, solicitó que se cancelara el contrato de compraventa y la devolución de los meses pagados, incluyendo los costos del seguro incluido.

Por su parte, el 11 de septiembre de 2023, First Bank Puerto Rico, en adelante First Bank, presentó su *Contestación a Querella*. En esencia, negó todas las alegaciones por falta de información y creencia para alegar lo contrario y arguyó que los hechos alegados en la *Querella* estaban fuera de su control por no haber participado de las negociaciones de venta, no ser responsable de los servicios o accesorios ofrecidos durante la negociación y por no ser responsable

de proveer servicios relacionados a la garantía o cualquier asunto relacionado a desperfectos mecánicos.

Por otro lado, el 18 de septiembre de 2023, FCA US LLC, en adelante FCA US, presentó una *Contestación a la Querella Según Enmendada* donde aceptó la compra del vehículo de motor y los servicios en garantía que recibió en Triangle pero negó todo el resto de las alegaciones por falta de información o conocimiento. Sin embargo, presentó sus propias defensas afirmativas, entre ellas no ser responsable por ningún acto u omisión personalísima de terceros, incluyendo el vendedor del vehículo o el concesionario, debido a que son entidades independientes sin afiliación corporativa alguna.

Por último, el 3 de octubre de 2023, Triangle presentó su *Contestación a Querella y Solicitud de Producción de Documentos* donde admitió haber vendido un vehículo a First Bank mediante contrato de arrendamiento donde la arrendataria es la recurrida y el numero de serie, el modelo, la marca, el numero de tablilla y el tipo 4 x 4 del vehículo. Por otro lado, negó que se tratara de un vehículo 8 cilindros y el resto de las alegaciones contenidas en la *Querella*. Así, alegó por su parte que, la señora Mártir Vélez estaba impedida por sus propios actos de instar la *Querella* y que la información que surge de la licencia provisional del vehículo, donde indica que el vehículo es 6 cilindros, es un error tipográfico.

Consecuentemente, el 4 de octubre de 2023, el DACO realizó una inspección del vehículo, a través de un técnico automotriz, mediante la cual corroboró que este es de 6 cilindros. Además, señaló que la información sobre el número de cilindros surge del *cover* del motor de la unidad, el cual se observa con levantar el bonete. Subsiguientemente, el DACO celebró una Vista Administrativa. En la misma, la señora Mártir Vélez solicitó la devolución de la diferencia entre el precio del vehículo de 6 cilindros

que le fue entregado y el precio de un vehículo igual, pero de 8 cilindros. Sin embargo, alega el recurrente en el recurso ante *nos* que en la *Querella* la recurrida solicita eso o la cancelación del contrato y devolución de meses pagados y costos de seguros.

Luego de celebrada la Vista Administrativa, El 11 de julio de 2024, el DACO emitió una *Resolución* en la cual realizó las siguientes determinaciones de hechos:

1. Al comienzo de la vista la parte querellante desistió de la causa de acción contra el FCA US LLC.

2. Entre la parte vendedora y la querellante se perfeccionó el 24 de abril de 2023 un contrato de compraventa de una unidad vehicular marca Jeep, modelo Grand Cherokee de año 2023, de color blanco, nuevo y con millaje en 10. (Ver contrato de compraventa).

3. Del testimonio de la querellante se probó que lo pactado fue un Summit 4 x 4 del año 2023, edición "dark night", tope de línea, y dos filas, y ocho cilindros.

4. El precio de la unidad fue de 77,495. Surge del contrato de compraventa que se dio por concepto de "crédito por carro usado" la suma de $34,500.00, que a su vez era el "balance adeudado".

5. La unidad vehicular fue financiada mediante un contrato de arrendamiento abierto con First Bank.

6. El valor pactado de la propiedad arrendada fue de $77,495.00 a una tasa de interés del 6.35%., y un residual de $25,824.

7. La parte querellante al momento de la compraventa fue acompañada de su compañero, Edwin Rivera, y quien, a su vez, había comprado anteriormente una unidad vehicular similar al objeto en controversia, con la diferencia de ser de tres filas, y 8 cilindros. La parte querellante solicito que la comprada fuera de 2 filas.

8. Entendimos probado que al momento de la compraventa el auto no tenía pegada la boleta "monroney label" sobre los requerimientos de especificaciones de la ley federal, y el precio sugerido de ventas.

9. De la boleta sometida en evidencia se desprende que el precio base para una "Jeep Grand Cherokee Summit Reserve 4 x 4" es de $51,224.00, y con los atributos de funcionalidad, interiores y seguridad asciende a una suma de $59,899.00.

10. De la declaración bajo juramento de la querellante entendimos probado que una cualidad esencial a la

compraventa es que la unidad vehicular fuera de 8 cilindros.

11. En las conversaciones de la compraventa estuvo el vendedor de VPH José Plaza, y luego se insertó el gerente de nombre Luis. Además, la querellante y su compañero, Edwin Rivera.

12. De conformidad al vendedor y al gerente la unidad vehicular estaba "customizada" para el gerente, antes de la compraventa.

13. En ningún momento se le expresó a la querellante que la unidad vehicular era seis cilindros, cuando, y repetimos, la querellante como condición esencial había establecido que su intención de compra era por la unidad vehicular de 8 cilindros.

14. El testimonio bajo juramento del Sr. Edwin Rivera corroboró el de la querellante a los efectos que en todo momento la querellante exigió que la unidad vehicular fuera de 8 cilindros.

15. Del conduce de entrega no se hace referencia alguna a que la unidad vehicular era 8 cilindros. En la licencia provisional entregada a la querellante si se hace referencia a "8 Cilin".

16. La unidad vehicular se vendió con 10 millas.

17. La parte querellante al momento de la compraventa no abrió la tapa del motor de la unidad vehicular, tampoco se le pidió que lo hiciera.,

18. El 29 de mayo de 2023 la querellante llevó la unidad vehicular por motivo de desperfectos mecánicos a la vendedora y al ver la documentación sobre las labores realizadas se percata que este tiene motor "3.6 L V6".

19. La querellante habló con el gerente general, Sr. Jorge Escudero, para hacer la reclamación sobre el incumplimiento de contrato y engaño y este nada hizo.

Conforme a lo anterior, DACO concluyó que se habían probado todos los elementos para concederle el remedio a la señora Mártir Vélez. Por lo cual, declaró *Ha Lugar* la *Querella.* Así las cosas, declaró nulo y resolvió el contrato de compraventa y, en consecuencia, el de arrendamiento financiero. Además, le otorgó un término de veinte (20) días a Triangle y a First Bank para que

devolvieran todas las mensualidades y prestaciones pagadas por la recurrida y para que cancelaran los contratos suscritos.

Por otro lado, ordenó a la señora Mártir Vélez a poner la unidad vehicular en disposición de los recurrentes para ser recogida sin cargo alguno luego de que se cumpla con el pago total ordenado. También, declaró que la suma ordenada a pagar devengará interés legal desde el momento de la orden de pago. Finalmente, desestimó la querella únicamente contra FCA US.

En desacuerdo, el 30 de julio de 2024, First Bank presentó una *Moción Solicitando Reconsideración.* En esta, alegó que durante la Vista Administrativa la señora Mártir Vélez testificó que no tenía reclamo alguno contra First Bank, por lo que entendía que la *Querella* se debía de desestimar en relación a estos. Además, adujo que se trataba de un contrato de arrendamiento financiero y no un contrato de venta por lo que no se podía imponer responsabilidad solidaria.

También en desacuerdo, el 31 de julio de 2024, Triangle presentó una *Moción de Reconsideración* mediante la cual esbozó que la recurrida había enmendado la *Querella* durante la vista solicitando un remedio distinto al que surge de la *Querella* original y que dicha enmienda no fue objetada por ninguna de las partes. El nuevo remedio solicitado según estos trataba de la devolución de la diferencia entre el precio del vehículo de 6 cilindros y el precio de un vehículo igual, pero de 8 cilindros, según el *monroney label*. Por esto anterior, solicitó que se reconsiderara la *Resolución* emitida a los fines de ordenar únicamente la devolución de la diferencia en precios. La misma fue rechazada de plano.

En consideración de lo anterior y aun inconforme, el 16 de septiembre de 2024, la parte recurrente oportunamente acude ante *nos* mediante el recurso de epígrafe y señaló que la agencia cometió los siguientes errores:

*Primer error*: **El DACO cometió error de derecho al desatender el remedio que solicitó la querellante en la vista administrativa.**
*Segundo error*: **El DACO cometió error de derecho al determinar que hubo dolo grave que vició en su totalidad al consentimiento brindado por la querellante, cuando la prueba desfilada lo que configuró fue un incumplimiento parcial o defectuoso, que conlleva exigir el cumplimiento total o libre de defectos y en la alternativa una reducción proporcional del precio.**

Examinado el recurso *de Revisión Judicial,* este Tribunal emitió una *Resolución* el 19 de septiembre de 2024, concediéndole un término de veinte (20) días a la parte recurrida para que expresara su posición al recurso. El 22 de octubre de 2024, la parte recurrida presentó una *Moción Informativa y en Solicitud de Término [...].* Posteriormente, el 24 de octubre de 2024, emitimos una *Resolución* concediendo el término adicional. Transcurrido el término sin el beneficio de la comparecencia de la parte recurrida, procedemos a resolver.

**II.**

**A. Revisión judicial de las determinaciones administrativas**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección,* 174 DPR 247 (2008).

La Sección 4.1 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9671). La finalidad de esta disposición es

delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson y otros v. Consejo de Titulares y otros*, 2024 TSPR 64, 213 ___ (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *Empresas Ferrer, v. A.R.Pe,* 172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Capote Rivera y otros v. Voilí Voilá Corp. y otros*, 2024 TSPR 29, 213 DPR ___ (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra*; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección, *Transporte Sonell, LLC. v. Junta de Subastas*, 2024 TSPR 82, 214 DPR ___ (2024); *OCS v. CODEPOLA,* 202 DPR 842 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la

interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Torres Rivera v. Policía de PR,* 196 DPR 606 (2016). Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, 213 DPR ___ (2024). *González Segarra et al. v. CFSE,* 188 DPR 252 (2013).

Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación,

aunque ésta no tiene que ser la única o la más razonable. *Vargas Serrano v. Inst. Correccional,* 198 DPR 230 (2017).  Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc. y otros, supra*; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, *supra*, las determinaciones de derecho pueden ser revisadas en su totalidad.  *Torres Rivera v. Policía* de PR, *supra,* pág. 627.

Si bien es cierto que la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo, *Rebollo v. Yiyi Motors,* 161 DPR 69 (2004), los tribunales revisores descartarán el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte.  Policía, supra.* Si la interpretación y la aplicación del derecho no es correcta, el foro apelativo está obligado a intervenir. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177 (2009).  "En esas circunstancias, [el foro apelativo] cederá la deferencia que

merecen las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra". *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021). Véase, además, *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Rolón Martínez v. Supte. Policía, supra.*

## B. Incumplimiento de contrato

El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Artículo 1230 del Código Civil (31 LPRA sec. 9751). Es facultativo contratar o no hacerlo, y hacerlo, o no, con determinada persona. Artículo 1232 del Código Civil (31 LPRA sec. 9753). Estos derechos no pueden ejercerse abusivamente ni contra una disposición legal. *Íd.* Así, las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. *Íd.* Así pues, lo acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Artículo 1233 del Código Civil (31 LPRA sec. 9754).

El contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Artículo 1237 del Código Civil (31 LPRA sec. 9771). En adición, "cuando los términos de un contrato son claros y no crean ambigüedades, estos se aplicarán en atención al sentido literal que tengan". *C.F.S.E. v. Unión de Médicos*, 170 DPR 443 (2007).

Según establece el Artículo 342 de nuestro Código Civil (31 LPRA sec. 6312), el negocio jurídico puede ser nulo o anulable. Es nulo: (a) si el objeto, la causa o el consentimiento son inexistentes; (b) si el objeto o la causa son ilícitos; (c) si carece de las formalidades exigidas por la ley para su validez; o (d) si es contrario a la ley imperativa, la moral o el orden público. *Íd.* Por lo tanto, si el

consentimiento se presta por error, violencia, intimidación o dolo, será nulo. Artículo 285 del Código Civil (31 LPRA sec. 6191). El dolo consiste en el cumplimiento deliberado y de mala fe de la obligación. Artículo 1164 del Código Civil (31 LPRA sec. 9316). La responsabilidad procedente del dolo es igualmente exigible en todas las obligaciones. *Íd.*

Así, el dolo se entiende como todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a resumirse el estado de ánimo de aquel que no solo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él. *Colón v. Promo Motor Imports, Inc.,* 144 DPR 659 (1997). Véase, además, *Sánchez Rodríguez v. López Jiménez,* 118 DPR 701 (1987); *Rivera Vda. de Hernández v. Hernández,* 44 DPR 356 (1933). No todo tipo de dolo produce la nulidad del contrato; es decir, para que el dolo produzca la nulidad de los contratos, deberá ser grave.

A tales efectos, el Artículo 292 del Código Civil establece que, el dolo grave es la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. (31 LPRA sec. 6211). Este tipo de dolo con características de gravedad ha sido denominado el dolo causante. *Colón v. Promo Motor Imports, Inc., supra; Rivera v. Sucn. Díaz Luzunaris,* 70 DPR 181 (1949). El dolo grave es el que causa, motiva, sirve de ocasión y lleva a celebrar el contrato, de modo tal que, sin él, este no se hubiera otorgado. *Colón v. Promo Motor Imports, Inc., supra.*

De otro lado, existe otra especie de dolo, denominado por el Artículo 294 del Código Civil como dolo incidental, cuya existencia no produce la nulidad del contrato, sino que solo obliga al que lo empleó, a indemnizar daños y perjuicios. (31 LPRA sec. 6213). Ello

es así, ya que este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación. *Colón v. Promo Motor Imports, Inc., supra.* En el dolo incidental, contrario al dolo causante, existe la voluntad de contratar del perjudicado, pero hay engaño en el modo en que se celebra el contrato. *Íd.*

Los efectos contrapuestos de cada tipo de dolo son notables. Es decir, mientras que el dolo causante produce la nulidad del contrato, el incidental permite únicamente la indemnización por daños y perjuicios. *Colón v. Promo Motor Imports, Inc., supra.* Así pues, resulta menester señalar que los dos tipos de dolo vician el consentimiento en el origen o en la formación del contrato, esto es, en la etapa de la contratación. *Íd.*

**C. Obligaciones del vendedor y la ineficacia del negocio jurídico**

Nuestro ordenamiento jurídico establece que, el vendedor está obligado a garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido. Artículo 1287 del Código Civil (31 LPRA sec. 9991). Una disminución insignificante del valor o la aptitud no se toma en cuenta. *Íd.* Así, cuando un defecto principal se descubre dentro de la garantía, se presume que el defecto estaba ya presente en el momento que el riesgo paso al comprador. *Íd.* La garantía se extiende al tiempo comprendido en el plazo de prescripción de la acción ejercitada por razón de la garantía o durante el tiempo que haya fijado el Departamento de Asuntos del Consumidor o cualquier otra agencia gubernamental. *Íd.*

De otro lado, el negocio jurídico puede ser ineficaz en razón de su invalidez o de su inoponibilidad, o por causa sobreviniente en los casos de resolución, revocación o rescisión. Artículo 339 del Código Civil (31 LPRA sec. 6302). Resolución es el negocio jurídico

unilateral previsto en la ley o en acto jurídico, en virtud del cual este se extingue y queda privado de efecto con carácter retroactivo. Artículo 340 del Código Civil (31 LPRA sec. 6303). Mientras, la rescisión es el negocio jurídico bilateral, o el unilateral previsto en la ley o en el propio negocio jurídico, en virtud del cual este queda privado de efecto. *Íd.*

Asimismo, es norma establecida que el incumplimiento de una obligación recíproca conlleva efecto resolutorio, siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860 (1995).

### D. Reglamento de Procedimientos Adjudicativos del DACO

La Regla 27.1 del Reglamento Núm. 8034 del 14 de junio de 2011, Reglamento de Procedimientos Adjudicativos del DACO, establece que:

> **[t]oda resolución otorgará el remedio que en derecho proceda aun cuando la parte querellante no lo haya solicitado.** Cuando el remedio otorgado sea una orden de hacer o cumplir con un acto determinado deberá contener, (1) cuando surja del expediente o (2) cuando se pueda tener conocimiento administrativo, el importe del valor monetario de la orden, para que en la alternativa de no cumplir con la misma, la parte obligada compense monetariamente. (Énfasis nuestro).

### III.

En el recurso de revisión administrativa de epígrafe, la parte recurrente manifestó que el DACO cometió error de derecho al desatender el remedio que solicitó la recurrida en la vista administrativa. Indicó, además, que el DACO cometió error de derecho al determinar que hubo dolo grave que vició en su totalidad al consentimiento brindado por la recurrida, cuando la prueba desfilada lo que configuró fue un incumplimiento parcial o defectuoso, que conlleva exigir el cumplimiento total o libre de defectos y en la alternativa una reducción proporcional del precio. No obstante, lo anterior, la parte recurrente no acompañó con su

recurso algún método de reproducción de la prueba oral desfilada en la vista adjudicativa, por lo que no nos puso en condición de revisar las determinaciones de hechos a las que llegó el DACO.

Según el derecho que antecede, un contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Artículo 1230 del Código Civil, *supra*. El contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Artículo 1237 del Código Civil, *supra*.

Según establece el Artículo 342 de nuestro Código Civil, *supra*, un negocio jurídico puede ser nulo o anulable. Es nulo: (a) si el objeto, la causa o el consentimiento son inexistentes; (b) si el objeto o la causa son ilícitos; (c) si carece de las formalidades exigidas por la ley para su validez; o (d) si es contrario a la ley imperativa, la moral o el orden público. *Íd*. Por consiguiente, si el consentimiento se presta por error, violencia, intimidación o dolo, será nulo. Artículo 285 del Código Civil, *supra*. El dolo consiste en el cumplimiento deliberado y de mala fe de la obligación. Artículo 1164 del Código Civil, *supra*.

En el caso ante *nos,* surge de las determinaciones de hechos de la *Resolución* recurrida que entre la parte recurrente y la recurrida se perfeccionó un contrato de compraventa de un vehículo marca Jeep, modelo Grand Cherokee del año 2023, de color blanco, nuevo y con millaje en 10. Surge, además, que se probó que las partes pactaron la compraventa de un vehículo Summit 4 x 4 del año 2023, edición dark night, tope línea y dos filas y 8 cilindros. Asimismo, se probó que al momento de la compraventa el auto no

tenía pegada la boleta *monroney label* sobre los requerimientos de especificaciones de la ley federal y el precio sugerido de venta.

Por otra parte, surge de la *Resolución* impugnada que una cualidad esencial de la compraventa es que la unidad vehicular fuera 8 cilindros. Además, del testimonio bajo juramento del señor Edwin Rivera se corroboró el de la recurrida a los efectos de que en todo momento la señora Mártir Vélez exigió que el vehículo fuera 8 cilindros. Consecuentemente, el 29 de mayo de 2023, la recurrida llevó la unidad vehicular por motivo de desperfectos mecánicos a la vendedora y al ver la documentación sobre las labores realizadas se percata que el motor es 6 cilindros. Posteriormente, se comunicó con el gerente general, el señor Jorge Escudero, para hacer la reclamación sobre el incumplimiento de contrato y engaño y este nada hizo.

Finalmente, surge de la *Resolución* emitida por el DACO que la parte recurrente no presentó prueba testifical con conocimiento de los hechos para refutar el testimonio de la recurrida y su testigo.

Así, a la luz del marco jurídico enunciado, ciertamente la parte recurrente incurrió en dolo grave. Esto, pues de conformidad con los hechos probados y recogidos en la *Resolución* emitida por el DACO, el vehículo por el cual se contrató fue uno de motor 8 cilindros y no de 6 como el que le fue entregado a la señora Mártir Vélez. Así, la Triangle le hizo una falsa representación a la recurrida, pues la cualidad de 8 cilindros era una condición esencial de la compraventa y no una accesoria. Por lo tanto, bajo las circunstancias específicas de este caso procedía la resolución del contrato de compraventa.

No debemos obviar que, el vendedor está obligado a garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido. Artículo

1287 del Código Civil, *supra*. Ese no fue el caso ante *nos*. Por lo cual, el segundo señalamiento de error no se cometió.[1]

Además, es menester dejar claro que la Regla 27.1 del Reglamento de Procedimientos Adjudicativos del DACO, *supra*, establece, en lo pertinente, que "[t]oda resolución otorgará el remedio que en derecho proceda aun cuando la parte querellante no lo haya solicitado". Por lo tanto, la agencia recurrida tenía la facultad para conceder el remedio que procedía en derecho, aun cuando este fuera distinto al que solicitó la señora Mártir Vélez en la Vista Administrativa. Además, era parte del remedio solicitado en la *Querella*. En consecuencia, el primer señalamiento de error no se cometió.

Por último, a pesar de que en la parte dispositiva de la *Resolución* recurrida el DACO no impone expresamente una responsabilidad solidaria entre el vendedor y la entidad financiera, sí hace mención de esta en su texto. En atención a ello, debemos señalar que, de conformidad con *Otero Rivera v. Bella Retail Group, Inc. y otros*, *supra*, la imposición de responsabilidad solidaria entre el vendedor y la entidad financiera no procede por ser contraria en derecho. Por lo tanto, aclaramos que en el presente caso cada parte deberá devolver lo que le corresponda, a saber: (1) el vendedor del vehículo de motor deberá devolverle al consumidor cualquier dinero por concepto de depósito o "*trade in*", si alguno, y devolverle a la entidad financiera el dinero recibido del préstamo; (2) la entidad financiera deberá devolverle al consumidor los pagos mensuales efectuados por el financiamiento del vehículo de motor, y (3) el consumidor deberá devolverle al vendedor el vehículo de motor.

---

[1] Es importante destacar que, según surge de la *Resolución* emitida por el DACO, en la Vista Administrativa la parte recurrente no presentó prueba testifical con conocimiento de los hechos para refutar el testimonio de la recurrida y su testigo.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones